## State of Vermont v. Elsie Oscarson

[845 A.2d 337]

No. 01-055

Present: **Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed January 16, 2004

---

[1] Justice Morse sat at oral argument but did not participate in this decision.

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Elsie Oscarson appeals from her conviction of two counts of aggravated sexual assault against two of her children. She argues that the trial court erred in (1) admitting hearsay testimony of one of the putative child victims even though that child was not "available to testify in court" as required by Vermont's child hearsay statute, V.R.E. 804a(a)(3); (2) admitting evidence concerning defendant's alleged abuse of a child who was not a putative victim of the charged crimes; and (3) allowing improper expert witness testimony. We reverse the conviction for the child who was not available to testify, but affirm the other conviction.

¶ 2. Defendant is the mother of three minor children, Joey, Jesse, and Brittany. In late 1994, defendant enrolled the children in day care. At the time, Jesse was three years old, Joey was four, and Brittany was an infant. At school, Jesse and Joey showed signs of severe neglect, including hunger, poor hygiene, inadequate winter clothing, socialization problems, and excessively foul language. Both boys suffered frequent nightmares and exhibited extreme self-mutilative behavior.

¶ 3. One day in February 1995, Joey had a severe temper tantrum after arriving at school, and, when he finally calmed down, told his teachers that his mother had touched him "down there" but that he was not allowed to tell. Around the same time, Jesse arrived at school unable to sit down, and complained that "my bum-bum hurts" and that "mommy hit me with a hammer." His teachers observed a deep bruise on his buttocks.

¶ 4. The day care staff repeatedly reported to state officials that they believed the children were being neglected and abused. Finally, in July of 1995, the boys were removed from defendant's home and placed in temporary foster care, each with one of his teachers. Shortly thereafter, Jesse and Joey told their foster parents that defendant had sexually abused them by performing oral sex on them, and forcing them to perform oral sex on her. The children related similar incidents of sexual abuse to their doctors: Jesse to Dr. Joseph Hagan, a pediatrician, and Joey to Dr. Lee Rosen, a clinical psychologist.

¶ 5. In January 1996, defendant was charged with two counts of aggravated sexual assault. First, however, the State acted to terminate defend-

ant's parental rights. In that proceeding, the family court held that the children's hearsay statements were admissible as evidence pursuant to V.R.E. 804a(a) (hearsay exception for putative victims of abuse, neglect, or sexual assault who are under age ten).[2] The family court terminated defendant's parental rights over all three children, and she did not appeal either the evidentiary rulings or the final decision. In May 1996, the State notified defendant that it also intended to offer the children's hearsay statements pursuant to V.R.E. 804a(a) in the criminal proceedings. Defendant, in turn, filed a motion seeking to depose and cross-examine the children regarding the hearsay statements.

¶ 6. In December 1998, the district court scheduled a hearing to determine the admissibility of the children's hearsay statements under V.R.E. 804a(a) and 807. At the hearing, the parties agreed to abide by the 1996 family court decision admitting the same hearsay statements under Rule 804a(a) "as the law of the case." The parties also agreed that, if the children were compelled to testify, their testimony would be taken by closed-circuit television or videotape pursuant to Rule 807. The court adopted the parties stipulation that the children's hearsay statements were admissible under Rule 804a(a), but ordered that any recorded testimony would have to be taken "contemporaneous with trial."

¶ 7. In July 1999, the parties pursued an alternate arrangement to videotape the children's testimony prior to trial pursuant to V.R.E. 807(d) (recorded testimony). Because of a disagreement as to whether prerecording the children's testimony would extinguish defendant's right to call the children at trial for cross-examination, defense counsel declined to proceed on that date. At an August 1999 status conference regarding the dispute, the State pointed out that the children had already been deposed and argued that they should not have to testify twice more — once before trial by videotape, and again at trial. Defense counsel argued that the children should testify "contemporaneous with the trial," rather than on videotape before trial, because there was a chance that they would not need to testify at all. The court eventually stated: "If [Rule 807] says it's done a certain way, we'll do it that way. If the rule doesn't speak as to the way it's done, then I would say we'll do it at trial, unless there's a reason for doing it otherwise."

---

[2] At the family court hearing, defendant argued that the children's hearsay statements were inadmissible under the Vermont Rules of Evidence because no evidence had been presented that the children were "available to testify in court or under Rule 807," as required by V.R.E. 804a(a)(3). The family court rejected this argument, explaining that the parties had implicitly agreed that the children were available under Rule 804a(a)(3) because defendant had agreed to allow the children to testify by means of videotape under Rule 807.

¶ 8. The issue lapsed after the parties entered a tentative plea agreement. But when that effort failed just days before trial, it resurfaced. Then, on the Friday before trial, defense counsel filed a written request asking the district court to "make arrangements" to have the children testify by closed-circuit television. The letter asserted that the previous district court judge had ordered this procedure in the event that the children were to testify at trial and, because his client definitely wanted the children to testify, "the arrangements will have to be made." The State responded that it was defendant's responsibility to secure the children's attendance and that it would provide only information to assist defendant in subpoenaing the children.

¶ 9. The next day, defense counsel indicated that he had located and subpoenaed Joey but could not find Jesse. Jesse had been adopted and was living in Texas; he was camping with his adopted mother in Arizona during defendant's trial. Defense counsel objected to admission of Jesse's hearsay testimony on grounds that the State bore the burden of producing Jesse under Rule 804a(a)(3), and unless the State produced him, his hearsay statements should be excluded. The court overruled the objection. After the State rested, with Jesse's whereabouts still unknown, defense counsel asked the court to strike Jesse's hearsay statements because the State had not made him "available to testify in court" as required by Rule 804a(a)(3). The court again rejected this argument.

¶ 10. A jury convicted defendant of aggravated sexual assault upon each child. She was sentenced to thirty-five years to life on each count, to be served consecutively, with the sentence for abuse of Jesse suspended. This appeal followed.

## I. Availability

¶ 11. Defendant first argues that it was error to admit Jesse's hearsay statements because the State failed to make Jesse "available to testify in court or under Rule 807" as required by Vermont's child hearsay statute, V.R.E. 804a. Defendant maintains that under V.R.E. 804a(a)(3) the State bore the burden of producing Jesse for trial, and its failure to do so after the defense requested to cross-examine Jesse rendered his hearsay statements inadmissible. To the extent that Jesse's out-of-court testimony is not otherwise admissible as nonhearsay or under another hearsay exception, we agree.

¶ 12. A child's hearsay statements are admissible under Rule 804a(a) only if the court finds that: (1) the statements are offered in a criminal proceeding in which the child is a putative victim of sexual assault, and the statements concern the alleged crime; (2) the statements were not

taken in preparation for a legal proceeding; (3) the child is available to testify in court or under Rule 807; and (4) the time, content, and circumstances of the statements provide substantial indicia of trustworthiness. V.R.E. 804a(a)(1)-(4). Either party may compel the hearsay declarant to testify by filing a motion pursuant to V.R.E. 804a(b).

¶ 13. The trial court has great discretion in admitting or excluding evidence under Rule 804a, and we will not reverse such decisions unless there has been an abuse of discretion resulting in prejudice. *State v. LaBounty*, 168 Vt. 129, 136, 716 A.2d 1, 6 (1998); see also *State v. Fuller*, 168 Vt. 396, 404, 721 A.2d 475, 481 (1998) (admissibility of evidence is committed to discretion of trial court; Court will reverse only upon showing of abuse of discretion); cf. *State v. Gallagher*, 150 Vt. 341, 348, 554 A.2d 221, 225, *cert. denied*, 488 U.S. 995 (1988) (applying "clearly erroneous" standard of review to trial court's finding that child sexual abuse victim's hearsay statements were "trustworthy" as required by V.R.E. 804a(a)(4)).

¶ 14. In this appeal defendant does not contest the admissibility of Jesse's hearsay statements under V.R.E. 804a(a)(1), (2), and (4). Thus, the sole question facing the Court is whether Jesse, who was not present at trial, was still "available to testify" within the meaning of 804a(a)(3). The parties advance two interpretations of the phrase "available to testify." Defendant argues that the phrase requires that the witness be physically present so that the defense, if it so elects, can cross-examine the child at trial. Under this scheme, defendant contends it is the State's burden to produce the child.

¶ 15. The State views the term "available" as the converse of "unavailable" in Rule 804. See V.R.E. 804(a) (witness is "unavailable" if exempted from testifying or does not testify due to privilege, refusal to testify, lack of memory, physical or mental infirmity, death, or physical absence despite reasonable effort to procure witness). Under this construction, the State would need only show that the child is "not unavailable," or, in positive terms, that the child is capable of testifying if called. Otherwise, the State argues, the burden to produce the witness is upon the party seeking to obtain the witness's testimony — in this case, defendant.

¶ 16. We adopt defendant's construction. Our review of the legislative history leads us to conclude that the availability requirement in Rule 804a(a)(3) is intended to preserve a defendant's right to confront the child hearsay declarant. It did not always work this way. An early draft of Rule 804a structured the child hearsay statute along the lines suggested by the State: it would have allowed the child to either testify, or be found "unavailable" pursuant to Rule 804. See S. 49, S. Jour. 450-51 (May 6,

1985) ("Statements by a person who is a minor at the time of trial are not excluded by the hearsay rule if the court specifically finds at the time they are offered that . . . (3) the minor either (A) testifies in court; (B) testifies by recorded testimony under Rule 807; or (C) is unavailable as a witness as defined in Rule 804 and there is corroborative evidence of the act that was allegedly committed against the minor."); H.R. Jour. 606 (May 2, 1985) (same).

¶ 17. This early draft followed what was then, and remains today, the majority rule. See R. Marks, *Should We Believe the People Who Believe the Children?: The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute*, 32 Harv. J. on Legis. 207, 238-39 (1995) (of thirty-four states with child-hearsay exceptions, the largest single group, sixteen, admit child-victim hearsay statements only if, in addition to other factors, the child either testifies or is found unavailable to testify and there is corroborative evidence of the act); see also A. Best, Wigmore on Evidence § 1764, at 884-910 (Cum. Supp. 2003) (collecting current child-hearsay exceptions for 39 states). This rule is modeled after Washington's pioneering child hearsay statute, Wash. Rev. Code § 9A.44.120 (2000), which itself mirrored the then constitutional requirements for admission of an absent witness's hearsay statements. See *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980) (in conformance with Framers' preference for face-to-face accusation, the Sixth Amendment permits admission of an absent witness's hearsay statement only if necessary due to the demonstrated unavailability of the witnesses, and then only so long as the statements are accompanied by sufficient "indicia of reliability"). But cf. *United States v. Inadi*, 475 U.S. 387, 393 (1986) (limiting *Roberts* unavailability analysis to those cases where "prosecution seeks to admit testimony from a prior judicial proceeding in place of live testimony"); *State v. Gallagher*, 150 Vt. at 345-46 n.4, 554 A.2d at 224 n.4 (adopting *Inadi* in Vermont).

¶ 18. Ultimately, after holding extensive hearings, the Vermont Legislature rejected the unavailability approach. See S. 49, S. Jour. 633-35 (May 11, 1985) (striking the unavailability requirement in draft Rule 804a(a)(3) and replacing it with the current rule); 1985, No. 82, § 2, eff. July 1, 1985 (codified as amended at V.R.E. 804a(a)(3)). Instead, the Legislature followed the pre-existing child-hearsay rule, V.R.E. 803(24)[3],

---

[3] Rule 803(24), promulgated by this Court on January 8, 1985, admitted hearsay statements of a person who was a minor at the time of trial "if the court specifically finds at the time they are offered that: (i) the statements are offered in a criminal case in which the minor is a putative victim and the statements concern the alleged crime; (ii) the minor is available for cross-examination at trial as to the statements; and (iii) the time, content and circumstances

and simply mandated that the child declarant be "available." See Reporter's Notes, V.R.E. 804a ("[T]he earlier version required that the child be available at trial for cross-examination. The present version also requires that the child be available, but for direct and cross-examination. V.R.E. 804a(b)."). Thus, even if we assumed that the meaning of "available to testify" in Rule 804a(a)(3) was ambiguous, we find that the legislative history negates the State's suggested construction that the rule requires the court to conduct an unavailability analysis. See *Agency of Natural Resources v. Deso*, 2003 VT 36, ¶ 16, 175 Vt. 513, 824 A.2d 558 (mem.) ("This Court will reject construction of an ambiguous statute where amendments to the same effect were expressly rejected by the Legislature.").

¶ 19. Instead, we hold that the plain language, legislative history, and Reporter's Notes accompanying V.R.E. 804a(a)(3) support the conclusion that the term "available to testify" is intended to preserve a defendant's right to confront the child-hearsay declarant. See Reporter's Notes, V.R.E. 804a ("The new hearsay exception evinces a strong legislative intention to safeguard the right of confrontation while at the same time curing the frequent problem of lack of corroboration caused by the traditional hearsay rules."). To trigger the right a defendant must move to compel the child to testify pursuant to Rule 804a(b) ("Upon motion of either party . . . the court shall require the child . . . to testify for the state."). But once 804a(b) is invoked, a child's hearsay statements are not admissible unless the child is at least physically present and available for cross-examination "in court or under Rule 807." V.R.E. 804a(a)(3). Indeed, we have reached this same conclusion, albeit in a different context, in our prior cases. See *In re C.K.*, 164 Vt. 462, 466, 671 A.2d 1270, 1273 (1995) ("The rule's requirement that the child be available to testify is to allow for cross-examination, to ensure the reliability of the hearsay statements."); *Gallagher*, 150 Vt. at 344, 554 A.2d at 223 ("The hearsay exception under [Rule 804a] is specifically aimed at preventing [a Confrontation Clause] violation by guaranteeing that the putative child victim will be available for the defendant's cross-examination.").

¶ 20. To argue who has the burden to produce the child is to miss the point. The rule simply conditions admissibility upon availability. Thus, in a case such as this, once the defendant moves to compel the child-hearsay declarant to testify, the State, as the proponent of the hearsay statements, has the de facto obligation to ensure the child is available. Other-

of the statements provide substantial indicia of trustworthiness." V.R.E. 803(24) (repealed eff. July 1, 1985).

wise, it will lose the ability to offer the hearsay testimony into evidence. See *Idaho v. Wright*, 497 U.S. 805, 816 (1990) (as proponent of evidence presumptively barred by hearsay rule and Confrontation Clause, State carries burden of proving admissibility).

¶ 21. The State next argues that defendant failed to make the requisite 804a(b) motion and surprised the prosecution and the court by demanding on the Friday night before trial that the children testify . We disagree. The record shows that defendant's attorney first filed a motion to compel the children to testify on February 3, 1997, and that defendant herself — despite extensive efforts by her counsel to dissuade her — consistently and repeatedly maintained throughout the pretrial process that it was her desire to confront her children at trial. For example, in a hearing one month before trial, defendant personally argued to the court that it was her right to face her accusers at trial and that she was being denied the right "because SRS don't want my kids getting on the stand and saying it didn't happen." Defendant's insistence on confronting her children in court might have been uncomfortable for the prosecution, the court, and even her own counsel, but it was no surprise.

¶ 22. Finally, the State contends that by agreeing to abide by the 1996 family court ruling that certain of Jesse's hearsay statements were admissible under Rule 804a, defendant also stipulated to Jesse's availability. The facts show, however, that defendant waived only her right to a hearing to reconsider the criteria for admissibility set out in 804a(a)(2) and (4). Defendant did not agree to waive her right to confront her children under 804a(a)(3). In fact, at the same hearing where defendant stipulated to the admissibility of Jesse's hearsay statements, defendant obtained a court ruling that she could call Jesse for cross-examination by videotape pursuant to Rule 807, and that the videotaping had to occur "contemporaneous with trial." Thus, we disagree with the State that the issue of Jesse's availability at trial was waived.

¶ 23. We note, however, that the 804a(a)(3) availability requirement does not prevent the State or the court from protecting the putative child victim from further harm. Where there is concern that in-court testimony would present a substantial risk of trauma to the child-victim, as the district court found here, the court may order such testimony to be taken by a visual and aural recording, V.R.E. 807(d), or closed-circuit television. V.R.E. 807(e); see also V.R.E. 804a(a)(3) (requiring the child to testify in court or under Rule 807). We have previously held that, in certain circumstances, such prerecorded testimony may be sufficient to satisfy a defendant's confrontation rights under Rule 804a(a)(3), so long as the

defendant is given a full and fair opportunity to cross-examine the child. See *State v. Cameron,* 168 Vt. 421, 426-28, 721 A.2d 493, 497-99 (1998) (videotaped pretrial direct testimony and cross-examination of child victims also satisfied defendant's 804a(a)(3) confrontation rights regarding victims' hearsay statements later admitted through other witnesses at trial).

¶ 24. There is some confusion about whether the district court ordered such prerecorded testimony here. At trial, the court held that Jesse was available because, among other reasons, he had been present and ready to testify a year before trial pursuant to a prior district court judge's Rule 807 order to prerecord the children's testimony. The trial court ruled that defendant's failure to go through with the taping constituted waiver. See *State v. Carroll,* 147 Vt. 108, 113, 513 A.2d 1159, 1162 (1986) (defendant may waive confrontation right by express agreement or conduct that relinquishes or abandons a known right). The facts, however, do not support this conclusion. As the trial court noted, this case was "an administrative nightmare." Prior to trial, three different district court judges considered the State's motion to record the children's testimony pursuant to Rule 807 three separate times, with contradictory results. The first and third times the court stated that in accordance with Rule 804a(a) the videotaping must occur "contemporaneous with trial," barring a motion to the contrary by the State. See V.R.E. 804a(a) (the court must find the hearsay statements meet the 804a(a) criteria, "at the time [the hearsay statements] are offered"). The second occurrence, which the trial court relied upon, is not an order, but merely a statement in the district court's findings of fact on an unrelated motion that the parties had agreed to preserve the children's testimony for trial via videotaping "later in the summer." Our review of the record indicates that the videotaping session was cancelled the day of the event precisely because the parties could not agree whether prerecording the children's testimony would negate defendant's right to also have them appear at trial. Given these facts, we cannot agree that defendant waived her right of cross-examination by refusing to go forward with the taping. To the contrary, defendant was clearly seeking to preserve that right and violated no court orders in doing so.

■ ¶ 25. Therefore, in conclusion, we hold that the trial court abused its discretion in admitting Jesse's hearsay testimony because he was not made available for cross-examination at trial as required by V.R.E. 804a(a)(3). This ruling clearly affected a substantial right of defendant as it deprived her of the statutory requirement that she be able to cross-

examine the child.[4] See V.R.E. 103(a) (error may not be predicated upon ruling which admits or excludes evidence unless substantial right of party is affected).

¶ 26. In a related issue, defendant argues that the trial court also erred in admitting the older brother Joey's hearsay testimony, even though Joey did appear and was cross-examined during trial by closed-circuit television pursuant to V.R.E. 807(e). Defendant contends that once the defense requests that a child-hearsay declarant testify, the State is obliged to call the child as part of its case in chief. See V.R.E. 804a(b) ("Upon motion of either party in a criminal or delinquency proceeding, the court shall require the child or mentally retarded or mentally ill person to testify for the state.").

¶ 27. Here, Joey did not "testify for the state," but rather was called by the defense. Defendant, however, did not object to the State's failure to call Joey at trial, and therefore waived her right to appeal on this issue. *State v. Fisher*, 167 Vt. 36, 43, 702 A.2d 41, 45-46 (1997); V.R.E. 103(a)(1); V.R.Cr.P. 52(b). Thus, we review this claim for plain error only. "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) (internal quotation marks and citation omitted). To reverse on plain error, we must find not only that the error seriously affected substantial rights, but also that it had an unfair prejudicial impact on the jury's deliberations. *Id.* at 538-39, 632 A.2d at 26.

¶ 28. Defendant argues on appeal that the court and the State impermissibly shifted the burden to her to call Joey to testify. Admittedly, by requiring the child to testify for the State, Rule 804a(b) allows the defendant to avoid any prejudice that might result from the perception that she is forcing the child to take the stand and answer questions of a sensitive nature. But failure to follow that procedure does not rise to the level of plain error. See, e.g., *State v. Schaal*, 806 S.W.2d 659, 663-64 (Mo. 1991) (en banc) (statute requiring defendant to call child-hearsay declarant as defense witness does not offend defendant's due process rights since negative jury reaction to vigorous examination of child witness is inherent in confrontation of child witness irrespective of which party calls

---

[4] Since we find that admission of Jesse's hearsay testimony violates defendant's statutory rights under Rule 804a(a)(3), we do not evaluate whether the error also violated the Confrontation Clauses of the 6th Amendment to the U.S. Constitution or Chapter I, Article 10 of the Vermont Constitution.

child to testify). Nor does it violate defendant's confrontation rights. As we have previously held, "hearsay testimony violates [the] Confrontation Clause only when [the] defendant is denied the opportunity to cross-examine the hearsay declarant." *Gallagher*, 150 Vt. at 345, 554 A.2d at 224 (citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Defendant's confrontation rights were fully satisfied when she cross-examined Joey pursuant to V.R.E. 804a(a)(3). There is no constitutional requirement that he also testify on direct. Therefore, we cannot find that the State's failure to call Joey as a witness was plain error.

## II. Harmless Error

¶ 29. Despite the error in admitting Jesse's hearsay testimony, we may uphold defendant's criminal convictions "if we find that the error was harmless beyond a reasonable doubt." *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002) (emphasis omitted); V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

¶ 30. The harmless error analysis is identical in constitutional and nonconstitutional criminal cases. *State v. Carter*, 164 Vt. 545, 553-57, 674 A.2d 1258, 1264-67 (1996). For the error to be harmless, the reviewing court must find beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error. *State v. Fuller*, 168 Vt. at 408, 721 A.2d at 484. When the error involves improper admission of evidence, the error cannot "be harmless if 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Carter*, 164 Vt. at 553, 674 A.2d at 1264 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963)).

¶ 31. As the State acknowledges, we must assess harmlessness by considering the likelihood of the conviction in the absence of the offending testimony. *Lipka*, 174 Vt. at 384, 817 A.2d at 34 ("[W]e must posit a trial without any evidence by the witness who testified in violation of defendant's [] rights."). Thus, except for the few statements described below that were admissible as nonhearsay or through other hearsay exceptions, we must ignore Jesse's hearsay testimony elicited at trial through his foster mother and day care provider, Susan Butterfield, and through the examining physician, Dr. Hagan.

¶ 32. In calculating harm, this Court uses the factors set forth in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). *Carter*, 164 Vt. at 556, 674 A.2d at 1266. Those are "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *State v. Lynds*, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) (quoting *Van Arsdall*, 475 U.S. at 684). As applied to a Confrontation Clause violation, which is analogous to the V.R.E. 804a violation here, we have held that the two most important factors are the overall strength of the State's case without the offending evidence, and the strength of the offending evidence. *Lipka*, 174 Vt. at 385, 817 A.2d at 34. Additional relevant *Van Arsdall* factors in the Rule 804a setting are whether the erroneously admitted testimony was corroborated by other evidence on the material points and whether it was cumulative. *Lynds*, 158 Vt. at 42, 605 A.2d at 503.

¶ 33. In this case, the analysis is further complicated by the fact that defendant was convicted of two charges of aggravated sexual abuse, each against a different child. Because the erroneously admitted testimony potentially could have prejudiced not only defendant's conviction for sexual abuse of Jesse, but also her conviction for abusing Joey, we will review each conviction separately.

## A. Jesse

¶ 34. Regarding Jesse, we cannot find that the error was harmless. The prosecution's case consisted of two parts: (1) circumstantial evidence strongly indicating that Jesse was abused in some way, and (2) direct evidence comprised of Jesse and Joey's testimony that the abuse was sexual. Thus, the boys' testimony was critical to proving the elements of a sexual act under 13 V.S.A. § 3251(1) (contact between defendant's mouth and the victims' penises). Striking Jesse's graphic and detailed hearsay testimony from the record leaves only Joey's bare bones affirmation — "I know it happened" — of events that occurred when he was three and four.

¶ 35. Although such a combination of strong circumstantial evidence and brief eyewitness testimony could be sufficient for a jury to conclude beyond a reasonable doubt that defendant is guilty, that is not the test under the harmless error analysis. Instead, we must be able to say beyond a reasonable doubt that the offending testimony did not contribute to the jury's verdict. *Carter*, 164 Vt. at 553, 674 A.2d at 1264. Here, Jesse's testimony was simply too important to the State's case, and too graphic and disturbing to say it was ignored by the jury. Nor was it so fully corroborated or cumulative as to make the error meaningless. Therefore, we find that the erroneous admission of Jesse's testimony was

harmful and, accordingly, reverse defendant's conviction for aggravated sexual assault on Jesse.

¶ 36. We explain this conclusion by going through the four relevant *Van Arsdall* factors, focusing primarily upon (1) the strength of the prosecution's case without the offending testimony and (2) the strength of the offending testimony, and then considering whether the importance of the offending testimony is mitigated because it is (3) corroborated on its material points or (4) is cumulative.

¶ 37. Regarding the first factor, we conclude that, even absent the offending testimony, the State presented enough evidence to affirm the conviction. Evidence that he was severely abused in some manner included testimony regarding Jesse's condition when he first arrived at day care, his psychological profile, and the bruises discovered on his body. The State's expert witness on child sexual abuse, Dr. Hagan, testified that Jesse's adverse behaviors — biting, self-mutilation, head banging, swearing, nightmares, delayed potty training, and wetting and soiling clothes — suggest that a child has suffered a "significant assault on what was previously a trusting relationship." Dr. Hagan further testified that although "consistent with" sexual abuse, there are "many possible sources of that adverse behavior."

¶ 38. Evidence that the abuse was sexual was supplied by the eyewitness testimony of Joey, who testified that defendant had used her mouth to lick his penis, and that it happened to Jesse too. There was also some limited circumstantial evidence that the abuse was sexual. Even though Jesse's hearsay statements were not admissible under V.R.E. 804a, portions of his testimony would have been admissible for the limited, nonhearsay purpose of showing that Jesse had detailed knowledge of sexual techniques and practices — specifically, fellatio and cunnilingus — that are beyond the normal knowledge or experience of three-year-old children. See V.R.E. 801(c) (statement not hearsay unless offered to prove the truth of the matter asserted). Thus, for the purposes of this inquiry only, we can assume the jury had corroborating evidence that Jesse was sexually cognizant far beyond his years. See *State v. Swan*, 790 P.2d 610, 620 (Wash. 1990) (en banc) (collecting cases) (accurate description by three-year-old children of fellatio, intercourse, and ejaculation demonstrated precocious sexual knowledge and is corroborative of sexual abuse), *cert. denied, Swan v. Washington*, 498 U.S. 1046 (1991); *State v. McCafferty*, 356 N.W.2d 159, 164 (S.D. 1984) (collecting cases) ("A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of his or her experience.").

¶ 39. Finally, the State's allegations of sexual abuse of Jesse were corroborated by nearly identical and even more extensive evidence of sexual abuse of his older brother Joey. Before reviewing this evidence, we explain its limited nature. In *State v. LaBounty*, 168 Vt. at 133-34, 716 A.2d at 4-5, which also involved an appeal of separate convictions for aggravated sexual assault by one defendant against two children, we refused to require separate trials for each offense under V.R.Cr.P. 14(b)(1) on grounds that evidence relating to both offenses would have been admissible in separate trials to show a common scheme or plan under V.R.E. 404(b). There, the victims separately reported abuse by the husband of their preschool teacher and told nearly identical stories. We held that, to show a "common objective, plan, and method" under V.R.E. 404(b), the State could put in evidence revealing "'the common features of defendant's conduct, the settings, and the victims.'" *Id.* at 135, 716 A.2d at 6 (quoting *State v. Johnson*, 158 Vt. 344, 352, 612 A.2d 1114, 1119 (1992) (single trial for camp counselor on multiple charges of sexual exploitation of minor campers)).

¶ 40. Here, the two victims also reported separately. Defendant argued that the victims were brainwashed and the stories fabricated. Thus, the State was entitled to refute defendant's allegations by introducing evidence tending to show that Joey was abused in the same way as Jesse, using the same methods, and at the same time or under similar circumstances. See V.R.E. 404(b). In this respect, the corroborating evidence is quite extensive. The two boys reported almost identical stories, suffered similar psychological effects, had the same advanced sexual knowledge, and said they were both threatened in the same manner to secure their silence.

¶ 41. Considering all of the above evidence, we conclude that the first factor favors upholding the conviction. Even without Jesse's erroneously admitted testimony, the State presented sufficient evidence — including an eyewitness and well corroborated circumstantial evidence — for a jury to find defendant guilty beyond a reasonable doubt of aggravated sexual assault on Jesse.

¶ 42. In contrast, the second major factor, the strength of the offending evidence, militates against affirming the conviction. Jesse's improperly admitted hearsay testimony was one of the most important and compelling aspects of the State's case. Through the testimony of Susan Butterfield, Jesse's teacher and initial foster mother, and his counselor, Dr. Hagan, the jury heard Jesse make repeated and detailed but childlike descriptions of his mother forcing upon him multiple acts of fellatio and cunnilingus:

"Mommy hurts my pee pee. She pulls it and bites it and she licks it";

"She drinks my pee," together with a demonstration by sucking on his own finger and his teacher's finger;

"Mommy puts her pee pee in my face";

"I touch mommy's pee-pee and I don't like it. It smells silly, and mommy scares me."

¶ 43. This testimony was not the prosecution's only direct evidence that the abuse Jesse suffered was sexual, but it was by far the strongest and most detailed. The only other direct evidence was Joey's confirmation at trial: "Yes she did it to Jesse, but not to Brittany," and his hearsay testimony to Doctors Hagan and Rosen that "I know it happened [to Jesse too]." Given the explicit, highly detailed and graphic nature of Jesse's hearsay statements, we find this evidence simply too damaging and too explicit to say it was ignored by the jury in favor of Joey's bare-bones affirmance of the abuse, or the limited circumstantial evidence. Thus, we find that this factor strongly favors reversal.

¶ 44. Lastly, we look to see if the strength of the offending evidence is mitigated by the third and fourth factors, that is, was the offending evidence corroborated on its material points or was it cumulative of properly introduced evidence? As we have already noted, Jesse's testimony was well corroborated by a wealth of circumstantial evidence indicating identical and simultaneous abuse of his brother Joey. But, on the material point of Jesse's testimony — that defendant touched his penis with her mouth — the corroborating evidence available to the jury was comparatively weak. Here, there was only Joey's affirmation that "I know it happened," and circumstantial evidence of Jesse's precocious sexual knowledge — neither of which has the same persuasive power as Jesse's detailed and graphic descriptions of having oral sex forced upon him by his mother.

¶ 45. Nor can we dismiss the error as cumulative. Again, none of the other evidence regarding Jesse had the same graphic and disturbing content. Although Joey gave virtually identical testimony that was properly admitted, Jesse's testimony cannot be considered cumulative of Joey's since Joey described abuse of himself, not Jesse. Moreover, based on the court's instructions to the jury that it must find independent evidence of guilt of abuse of each child, we must assume that if the jury considered Joey's testimony about the abuse he suffered when deliberat-

ing on the charge for abuse of Jesse, that it did so only as corroborative evidence and not as cumulative evidence.[5]

¶ 46. In weighing these four factors, we cannot say beyond a reasonable doubt that the erroneously admitted evidence did not "contribute[]" to the jury's verdict. *Carter*, 164 Vt. at 553, 674 A.2d at 1264; see also *Chapman v. California*, 386 U.S. 18, 23-24 (1967) ("An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless."). Here, the offending testimony was simply the strongest evidence of abuse of Jesse presented at trial. While there was perhaps sufficient circumstantial and lesser quality direct evidence to sustain a conviction for sexual assault, we cannot say beyond a reasonable doubt that the jury ignored this more powerful and more direct evidence of guilt in reaching its verdict. Thus, we conclude that it was harmful error to admit Jesse's hearsay testimony. Defendant's conviction for aggravated sexual assault of Jesse must be reversed, and she must be given a new trial.

## B. Joey

¶ 47. We reach the opposite conclusion, however, regarding defendant's conviction for aggravated sexual assault of Joey. On this charge, all four of the critical *Van Arsdall* factors favor affirmance. First, the State's overall case regarding Joey was substantially stronger than its case regarding Jesse. Second, the offending testimony was far less important, since Jesse's hearsay testimony did not refer to abuse of Joey and, therefore, was relevant only as corroborating evidence. Third, Jesse's hearsay statements, although graphic and disturbing, were highly corroborated by other properly admitted evidence, particularly by Joey's even more graphic and disturbing testimony. Fourth, as corroborating testimony, Jesse's hearsay statements were cumulative. Thus, we conclude that regarding abuse of Joey, the prosecution's case was so overwhelming that the error in admitting Jesse's hearsay was harmless beyond a reasonable doubt.

¶ 48. On the first factor, the State presented an extremely powerful case that defendant sexually abused Joey. Unlike Jesse, Joey testified live, by closed-circuit television pursuant to V.R.E. 807, that his mother used her mouth to lick his penis. Joey's veracity was tested under defend-

---

[5] The jury instructions read: "Convincing proof of [the element of contact between defendant's mouth and the victim's penis] with one child does not actually prove the element with the other child. The jury must find independent evidence from the facts presented to prove each charge."

ant's cross-examination, and the jury had a full opportunity to observe and weigh Joey's demeanor and credibility. Moreover, Joey's live testimony was consistent with and corroborated by his extensive hearsay testimony admitted pursuant to V.R.E. 804a(a).

¶ 49. These hearsay statements were particularly powerful, graphic, and disturbing. After his initial report in February 1995, Joey again began reporting abuse to Jennifer Dawson, his teacher and temporary foster mother, about two weeks after being removed from defendant's home, including disclosures that "Mommy licks my pee, I lick Momma's pee" and that "Tony [defendant's boyfriend] puts his pee-pee in my bum bum." Relating an incident when Joey described a sexual assault by his mother, Dawson testified that she had no doubt that Joey, at age five, was trying to show how he performed oral sex on his mother. Joey also described, in child-like detail, the sounds and behavior of his mother reaching sexual orgasm.

¶ 50. These hearsay statements to Dawson were reinforced and corroborated by similar statements Joey made about a week later to his clinical psychologist Lee Rosen. At the time, Rosen worked frequently with sexual abuse victims and was trained in eliciting information from young children without asking leading questions. In answer to the question "What makes you mad?" Joey, without further prompting, told Rosen "when mommy licks my pee-pee." Joey then verified that "pee-pee" meant his penis, that his mother told him to keep it a secret, and later, that she does it every night.

¶ 51. The circumstantial evidence that Joey was sexually abused was significant, and much stronger than that regarding Jesse. At school Joey became notorious for scrambling to the top of an indoor climbing structure at naptime, where, out of reach of the teachers, he would scream "fucker, fucker" at the top of his lungs. TR 7/24 at 48. Anytime he was given direction, he would "just become out of control," and then it took three or four teachers to calm him down. He was so violent that parents of other children became concerned, and the school applied for state assistance to cover the costs of taking care of him. Joey was never potty trained by his mother and was still in diapers at age four, when he told Dawson, "Mama makes me eat my ka ka whenever I have accidents." Joey had to be fed and clothed by his day care providers and suffered nightmares. Joey was also self-mutilative. When angry, he would bang his head against a wall or door. Joey's adoptive mother Laurie Potter testified that for the first six months to a year after coming to her family in December 1995, Joey wet and soiled his pants every night. He had a difficult time socializing with other children, still had nightmares every

night, and would curl up in a protective fetal position anytime he did something wrong.

¶ 52. Most importantly, unlike with Jesse, the State presented evidence that Joey's behavior was and is highly sexualized. The evidence showed that since entering foster care at age five Joey has struggled with compulsive masturbation, clothing fetishes, and inappropriate touching of girls and women. The issues presented by Joey's sexualized behavior ultimately forced him into special education classes at school.

¶ 53. The State's expert witness, Dr. Hagan, testified that each of Joey's abnormal behaviors, considered separately, is consistent with sexual abuse and post-traumatic stress disorder. But when these traits are combined, Dr. Hagan testified, "there would be a diagnostic certainty that there had been some significant trauma." He added that "because of the highly sexualized nature of some of the matters described, I would be extremely suspicious of child sexual abuse."

¶ 54. In contrast, the defense presented no other witnesses besides defendant. As we previously explained, defendant alleged that Joey was brainwashed and that his hearsay testimony was fabricated. Joey refuted those allegations on the stand and testified that his mother did "sex things" — specifically, oral sex — to him and his brother. More persuasively, the State showed that Joey first reported the abuse in February 1995, simultaneously with the abuse and while he was still in defendant's care. Because this report occurred six months before he was taken out of defendant's home and prior to any opportunity for so-called "brainwashing," it tended to reinforce the credibility of Joey's testimony and to rebut defendant's charges of an improper motive. Thus, considering all of the evidence, we find that the State presented an overwhelmingly strong case that defendant sexually assaulted Joey.

¶ 55. Regarding the second major factor, the strength of the offending testimony, we note that, although Jesse's testimony was graphic and disturbing, none of Jesse's statements pertained to Joey, other than to occasionally note that Joey was also present. Moreover, as we described above, the court instructed the jury that it must find independent and separate evidence of abuse for each child. Thus, legally and factually the jury could only have used Jesse's statements as corroborative evidence and not as direct evidence.

¶ 56. Even though limited to a corroborating role, Jesse's hearsay statements were still powerful in that they tended to confirm Joey's identical testimony. Graphic parallel testimony of two people who allege they were victims of the same crime by the same defendant is intrinsically damaging, particularly when the testimonials come from children

whose credibility is uncertain because of their very young age, as here. Moreover, in the context of child sexual abuse cases we have found erroneously admitted testimony regarding a similar sexual assault on another child besides the victim to be harmful. See *Lipka*, 174 Vt. at 387-89, 817 A.2d at 36-37 (collecting cases) (although relevant only to corroborate testimony of victim, erroneous admission of evidence of prior child sexual abuse of a separate victim was harmful because of high danger of prejudicial impact on deliberations of jury). We continue to adhere to the high standard on harmless error set by *Lipka*, but nonetheless find that, under these factual circumstances, Jesse's offending hearsay statements did not have the same prejudicial impact. In particular, *Lipka* and the cases it cites can be distinguished on two critical points.

¶ 57. Unlike *Lipka*, this was not a close case. In *Lipka* there was no corroboration of the victim's accusations except for erroneously admitted testimony of another child alleging similar abuse. 174 Vt. at 385, 817 A.2d at 34. Noting that the case was a "classic swearing contest," we held that the erroneously admitted evidence could not be harmless since it may have caused the jury to believe the victim rather than the defendant. *Id.* See also *Lynds*, 158 Vt. at 43, 605 A.2d at 504 (erroneously admitted . expert witness testimony not harmless where trial otherwise came down to a "credibility contest" between defendant and victim). This case is different. Joey's testimony that he was sexually abused was accompanied by strong internal indicia of reliability, such as the high degree of consistency of his statements over the four years it took to bring the case to trial, his extensive precocious sexual knowledge, see *Swan*, 790 P.2d at 620 (accurate precocious sexual knowledge by very young child provides intrinsic assurance of the reliability of child's hearsay statements), and the fact that he reported contemporaneously with the abuse. Additionally, the State presented powerful circumstantial evidence strongly corroborating that the abuse did in fact occur. Joey's psychological profile, in particular, demonstrates the magnitude of abuse he suffered. This was not a situation where, but for the matching testimony of his brother, the jury might not have believed Joey .

¶ 58. More importantly, the jury would have heard substantial evidence of abuse of Jesse, regardless of the error. In *Lipka* we held that erroneous admission of uncharged allegations of prior child sexual abuse with a child other than the victim at trial was "inflammatory," "incendiary," and the "most prejudicial evidence imaginable." 174 Vt. at 388, 817 A.2d at 36-37. But there, and the cases cited therein, the finding of prejudice was based on the fact that all such evidence of uncharged prior bad acts was

inadmissible character evidence under V.R.E. 404(b). *Id.* at 396, 817 A.2d at 44.

¶ 59. Here, in contrast, defendant was charged with abusing two victims simultaneously. As we have already held, evidence of the common features of defendant's conduct, the setting, and the victims was fully admissible for each charge under V.R.E. 404(b). Therefore, the jury properly had before it extensive evidence that defendant had sexually assaulted Jesse as well as Joey. That evidence included Joey's eyewitness testimony, Joey's hearsay statements to Dr. Hagan and Dawson, Jesse's precocious sexual knowledge, physical evidence of the abuse of Jesse, and Jesse's highly disturbed psychological profile. Similarly, although Jesse's offending testimony was graphic, the jury had before it direct and even more graphic and disturbing testimony from Joey. Thus, we conclude that even though Jesse's hearsay statements constituted powerful corroborating evidence, exclusion of those statements would not have changed the facts properly before the jury or the context and character of the evidence.

¶ 60. As the above discussion indicates, the potential prejudicial impact of the offending testimony was substantially mitigated by other evidence that was properly before the jury — or, in the language of our third and fourth factors, the offending testimony was highly corroborated and cumulative. Thus, we conclude that the impact of the error on the conviction for assault of Joey, if any, was minimal. Cf. *Gallagher*, 150 Vt. at 349, 554 A.2d at 226 (admission of child sexual abuse victim's hearsay statements to examining doctor was harmless, given cumulative nature of doctor's testimony); *Fuller*, 168 Vt. at 408-09, 721 A.2d at 484 (erroneously excluded evidence harmless since it would not have changed jury's verdict given its low probative value as compared to other extensive evidence of guilt); *Carter*, 164 Vt. at 557-58, 674 A.2d at 1266-67 (improperly admitted prior inconsistent statement harmless where remaining properly-admitted inculpating evidence was extensively corroborated).

¶ 61. What distinguishes this situation from the charge regarding Jesse is that there the erroneously admitted testimony represented by far the State's strongest direct evidence of abuse of the putative victim, and thus the conviction could not be saved by the weaker circumstantial evidence surrounding it. In Joey's case, however, the error was tangential to the State's case. Given the overwhelming and highly reliable direct evidence that defendant sexually abused Joey and the fact that the offending testimony was highly corroborated on its material points and cumulative of properly admitted evidence, we hold that the error in admitting Jesse's hearsay testimony regarding the sexual assault of Joey

was harmless beyond a reasonable doubt. See *Harrington v. California*, 395 U.S. 250, 252-54 (1969) (finding erroneously admitted confessions of two co-defendants harmless where testimony was cumulative, and case against defendant was overwhelming and not woven solely from circumstantial evidence).

¶ 62. In this respect, this case is strikingly similar to *Giles v. State*, 877 P.2d 365 (Idaho 1994), in which the Idaho Supreme Court held that despite its reversal for harmful error of defendants' conviction for sexual abuse of a younger child, there was no taint upon the identical conviction in the same trial for abuse of the older child. *Id.* at 369-70. Like here, *Giles* involved erroneous admission of one of two child-victims' hearsay statements regarding the sexual abuse. The Idaho court reversed as to the charge of abuse of the child whose hearsay statements were wrongfully admitted, but found that regarding the other child, the remaining evidence was overwhelming proof of Giles's guilt.

> It appears to us beyond a reasonable doubt that, absent the hearsay testimony of Dr. Jambura, the result of the trial would have been the same. The record includes testimony by the older child which clearly implicates both defendants, physical evidence of abuse testified to by two other doctors, the psychological corroboration by two counselors of behavior consistent with sexual abuse, and police interviews with the older child. Given the extent of the corroborative evidence indicating Giles' guilt, we hold that the admission of Dr. Jambura's testimony about the younger child's statements was harmless error as to Count 1.

*Id.* at 370; cf. *State v. Kitzman*, 920 P.2d 134, 146-48 (Or. 1996) (reversible error in admitting younger victim's hearsay testimony also tainted conviction for abuse of older sister, where error was graphic and disturbing and not corroborated by or cumulative of admissible evidence, and where jury's assessment of older sister's credibility was crucial to state's case). Therefore, we conclude that the error in admitting Jesse's hearsay testimony was harmless beyond a reasonable doubt in the conviction for assault of Joey.

### III. Remaining Issues

¶ 63. Defendant advances several other claims of error, none of which has merit. First, defendant argues that the trial court erroneously allowed Ms. Butterfield to testify, over defendant's objection, that Jesse told her that "mommy hurts my peepee. She hurts my Joey. She hurts

my Brittany." Defendant argues that because Brittany was not a putative victim of the charged crimes, Jesse's hearsay statement referring to her should not have been admitted under Rule 804a(a). The trial court rejected this argument in light of defendant's pretrial stipulation to the statement's admissibility. Given our conclusion that the trial court committed reversible error in admitting Jesse's hearsay statements — including this statement — regarding her conviction for abuse of Jesse, we review this claim only to determine if Jesse's reference to Brittany also prejudiced defendant regarding her conviction for abuse of Joey. See *Lipka*, 174 Vt. at 384, 817 A.2d at 33 (Court may uphold criminal conviction if error was harmless beyond a reasonable doubt).

¶ 64. We hold that it did not. During defendant's three-and-one-half day trial, numerous witnesses testified to defendant's alleged sexual abuse of Joey and Jesse. In comparison, Jesse made but a passing reference to Brittany. More critically, any potential inference that defendant also sexually abused Brittany was expressly dispelled when Joey stated during his live testimony: "Yes, she did it to Jesse but not to Brittany." Given our prior conclusion that the evidence against defendant in this case was overwhelming, we find that Jesse's brief, unspecified reference to Brittany was harmless beyond a reasonable doubt, and had no effect on the outcome of defendant's conviction for sexual assault on Joey. See *Lynds*, 158 Vt. at 43, 605 A.2d at 503 (evidence must be overwhelming for error to be harmless) (citing *Clark v. O'Leary*, 852 F.2d 999, 1005 (7th Cir. 1988)).

¶ 65. Second, defendant argues that the State's expert, Dr. Hagan, impermissibly vouched for the credibility of Jesse and Joey's hearsay statements. She points to Dr. Hagan's testimony about the methods he used to determine whether a child knows the difference between the truth and a falsehood and his testimony regarding Joey's demeanor. At trial, Dr. Hagan stated that, when told about Jesse's disclosures, Joey suddenly became alarmed. Dr. Hagan also testified that when Joey affirmed that the sexual abuse did in fact occur, "[h]is tone was for a child age five, almost five, his tone was remarkably declaratory, remarkably specific." This testimony, defendant argues, "clearly crossed the bounds of permissible expert testimony in a child sexual abuse case."

¶ 66. Defendant did not raise these objections at trial, and we therefore review for plain error. See generally V.R.E. 103(a)(1); V.R.Cr.P. 52(b); *Pelican*, 160 Vt. at 538, 632 A.2d at 26. As an initial matter, we note that all of Dr. Hagan's disputed expert testimony focused on whether Jesse was sexually abused, not Joey. Thus, this issue has, at

best, marginal relevance to defendant's remaining conviction for abuse of Joey. But even if it were central, we would not find plain error. Contrary to defendant's assertion, Dr. Hagan did not "clearly and impermissibly bolster the credibility" of the children's hearsay testimony. He offered no opinion as to whether Jesse and Joey were telling the truth about being sexually abused by defendant. His testimony that he followed certain protocols in determining whether a child knows the difference between the truth and a lie does not support defendant's assertion that he acted as a "truth detector." Similarly, Dr. Hagan's description of Joey's demeanor was not tantamount to vouching for Joey's credibility. See *Fisher*, 167 Vt. at 43-44, 702 A.2d at 45-46 (no plain error in admitting expert testimony that children's behavior was "suggestive of some direct trauma," and that child's demeanor "seemed extremely congruent with . . . what she was saying"); *State v. Recor*, 150 Vt. 40, 45, 549 A.2d 1382, 1386-87 (1988) (no plain error in admitting expert testimony that child's consistent statements gave "a sense that what they are saying happened, happened"). Defendant fails to establish that the court's admission of Dr. Hagan's testimony was plain error.

¶ 67. Finally, defendant argues the court erroneously allowed Dr. Rosen to testify that he would not write something in his notes "that wasn't true." Defendant asserts that, through his testimony, Dr. Rosen, a fact witness, implied that Joey was telling the truth when he described being sexually abused. Defendant also failed to raise this objection at trial, and thus we review this issue for plain error as well.

¶ 68. Taken in its proper context, Dr. Rosen's statement offers no support for defendant's argument. The record reveals that five years had elapsed between Dr. Rosen's interview of Joey and defendant's trial. During his trial testimony, Dr. Rosen referred repeatedly to his notes, over defendant's objections. In an attempt to lay a foundation that would allow Dr. Rosen to refer to his notes, the State asked Dr. Rosen whether the notes accurately reflected what transpired in the interview. Dr. Rosen then testified that he would not write down anything in his notes that was not true. Dr. Rosen did not imply that Joey was telling the truth about being sexually abused, but rather was indicating his belief that his notes accurately reflected the events at the session. The court's admission of Dr. Rosen's testimony was not plain error, if any error at all. See *Pelican*, 160 Vt. at 538-39, 632 A.2d at 26.

*Defendant's conviction for aggravated sexual assault on Jesse is reversed and remanded for a new trial. Defendant's conviction for aggravated sexual assault on Joey is affirmed.*

¶ 69. **Amestoy, C.J.,** concurring. I concur but write separately to emphasize what I trust can be learned by prosecutors, defense attorneys, and judges from the consequences of this extraordinarily difficult and tragic case.

¶ 70. While I do not dispute the majority's representation that the record below supports defendant's claim that she maintained her right to confront her children throughout the pretrial process, that representation does not fully capture the confusion that led to a result I am fully persuaded the State, defense, and court sought to avoid: the eve-of-trial demand that the children be available to testify. The trial court's characterization of the pretrial proceedings as an "administrative nightmare" is apt, but it pales in comparison to the nightmares of sexually abused children subjected to the trauma of court testimony. "It has also been widely recognized that, as traumatic as sexual abuse incidents themselves are, children's experiences with the criminal justice system during the pre-trial and trial stages constitute a second victimization, in many respects as devastating to them as the original abuse." G. Goodhue, *Maryland v. Craig: Balancing Sixth Amendment Confrontation Rights with the Rights of Child Witnesses in Sexual Abuse Trials,* 26 New Eng. L. Rev. 497, 517 (1991) (footnotes omitted).

¶ 71. The legal dilemma posed by this case appears to have been created by the good faith efforts of the State and defense counsel to avoid requiring the children to testify. The State's reliance upon the family court's 1996 determination that the children's hearsay statements were admissible under V.R.E. 804a(a) and 807, and defendant's subsequent 1998 representation to the district court that the same hearsay statements were admissible "as the law of the case," led to the reasonable belief that the availability requirement would be satisfied by making the children available for videotaping pursuant to Rule 807. The majority accurately observes that both parties were unclear as to whether such taping was to take place during trial or beforehand. The confusion of the parties was secondary to the uncertainty of the trial judges, two of whom opined that videotaping had to occur "contemporaneous with trial." The majority correctly notes, however, that the 807(d)(4) taping need not always be contemporaneous with trial to satisfy the availability requirements of 804a(a)(3), since the salient inquiry is whether the recorded testimony — before trial or contemporaneous with trial — is sufficient to satisfy a defendant's confrontation rights. As the majority points out, we have held that where children testified at trial through previously videotaped testimony taken pursuant to V.R.E. 807, the children's videotaped testimony, including cross-examination, satisfied the availabil-

ity requirement contained in V.R.E. 804a. *State v. Cameron*, 168 Vt. 421, 426-28, 721 A.2d 493, 497-99 (1998).

¶ 72. Although I concede I am drawing an inference from the record below, the eve-of-trial decision to compel the children's testimony appears to have been made by the defendant herself — a decision unlikely to have been recommended by experienced defense counsel. A client's eve-of-trial insistence that the children be compelled to testify, the State's mistaken assumption that they would not be, and the trial court's reliance on a pretrial record that is confusing to an appellate court even after months of careful scrutiny, led to a result that should not be repeated, particularly in light of the guidance that the majority opinion today provides.

¶ 73. I take the liberty of summarizing three significant points made by the majority. First, 804a(a)(3) preserves a defendant's right to confront the child-hearsay declarant. Absent a defendant's stipulation or waiver, the child must be available for cross-examination either in court or pursuant to Rule 807. Second, to trigger that right, a defendant must move to compel the child to testify pursuant to Rule 804a(b). Third, as proponent of the hearsay statements, the State has the obligation to ensure that the child is available to testify in court or pursuant to Rule 807.

¶ 74. Because lack of timely notice may have profound emotional consequences for the child witness, the court and the parties have a particular responsibility to determine — as early as is possible consistent with defendant's right of confrontation — whether defendant seeks to have the child-hearsay declarant available to testify. When the State intends to offer the hearsay statement of a victim who is a child ten years of age or under, V.R.Cr.P. 26(d) requires the State, subject to the exception within the rule, to furnish to defendant a written statement of the evidence it intends to offer, including the name of each witness who will testify to the statement of the victim, at least 30 days before trial. V.R.Cr.P. 26(d). Assuming State compliance with the rule, the trial court should be able to determine well in advance of trial whether either party will move to compel the child to testify pursuant to Rule 804a(b).

¶ 75. Rule 804a, properly construed and utilized, is intended to simultaneously serve two compelling interests: preserving an effective opportunity to cross-examine the person whose statement is being used against the defendant, and minimizing the trauma of a sexually abused child's experience with the criminal justice system. See Goodhue, *supra*, at 517 ("Given the turmoil and trauma experienced by most children who have been victims of sexual abuse, it is clear that protecting them from further unnecessary trauma is a compelling interest."). The "availability" issue in

this case was distorted by the confluence of misjudgments by the State, defense, and the trial court. These errors led, in turn, to a result that no orderly system of justice should tolerate: the compelled testimony of child victims of sexual abuse without adequate notice to the children and those with a legal responsibility to care for them.

¶ 76. I am authorized to state that Chief Justice Allen (Ret.) joins in this concurrence.