NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 58

No. 2014-440

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Shawn Kelley | October Term, 2015 |

Michael S. Kupersmith, J.

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Pamela Hall Johnson, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Michelle Kainen of Kainen Law Office, PC, White River Junction, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** Defendant Shawn Kelley argues that this Court should vacate his domestic assault conviction because numerous reversible errors occurred during his jury trial. Specifically, he claims that the trial court improperly admitted two pieces of hearsay evidence, that the trial court incorrectly denied his motion for judgment of acquittal, and that the State made prejudicial remarks during its closing statement. We affirm.

¶ 2. The following facts are drawn from the testimony of witnesses and the exhibits introduced at trial.

¶ 3. On New Year's Eve 2013, defendant and his girlfriend, the complainant, welcomed the new year at defendant's apartment. They spent the early part of the evening

drinking. Later in the evening, the dispatcher at the Williston State Police barracks received a 911 call from the complainant. Distraught, the complainant spoke with the dispatcher:

> DISPATCHER: Vermont 911, where is your emergency?
> COMPLAINANT: Umm, I need an ambulance—
> DISPATCHER: Where?
> COMPLAINANT: 9 Fuller Place.
> DISPATCHER: Ok, I need you to speak up a little bit. Nine what place?
> COMPLAINANT: Fuller.
> DISPATCHER: In what town?
> COMPLAINANT: Essex.
> DISPATCHER: Ok. Is this for you or someone else?
> COMPLAINANT: Me.
> DISPATCHER: Ok. How old are you?
> COMPLAINANT: I'm forty-seven.
> DISPATCHER: Ok. What's happening to you?
> COMPLAINANT: I was beaten.
> DISPATCHER: Ok, who beat you?
> COMPLAINANT: [Defendant].
> DISPATCHER: Is he still there?
> COMPLAINANT: Yes.
> DISPATCHER: Ok. Is he hiding or does he—
> COMPLAINANT: I'm— No—
> DISPATCHER: Are you hiding?
> COMPLAINANT: Well, kind of . . . yes.
> DISPATCHER: K, what is your name?
> COMPLAINANT: [Complainant].
> DISPATCHER: Ok [Complainant], how old are you?
> COMPLAINANT: Forty-seven.
> DISPATCHER: Ok, all right. And what did he beat you with?
> COMPLAINANT: Fists.
> DISPATCHER: Ok. Does he know that you're calling for help?
> COMPLAINANT: Ahh, I don't know.
> DISPATCHER: Ok, has he been drinking or is he on drugs?
> COMPLAINANT: We both are.
> DISPATCHER: You're both on drugs?
> COMPLAINANT: Drinking.
> DISPATCHER: Ok.

At this point, approximately one minute into the call, the dispatcher reached the Essex Police Department and requested that they respond; the complainant remained on the phone and listened to the dispatcher's conversation with the police. The dispatcher then asked the

2

complainant several follow-up questions for the remainder of the eight minute call. The dispatcher concluded the call once the responding officers reached the complainant.

¶ 4. Two police officers responded to the 911 call. Defendant met the officers at the vestibule of his apartment building. After climbing to defendant's third floor apartment, the first officer remained with defendant in the hallway, while the second officer entered the apartment to investigate.

¶ 5. Inside the apartment, the second officer saw blood in the entryway and followed a narrow trail of blood into the bedroom, where he found the complainant on the phone with significant blood above her left eye. After checking that she could move safely, he asked the complainant to come into the living room to be interviewed. During this interview, the complainant told the officer that defendant struck her.

¶ 6. Meanwhile, in the hallway, defendant told the first officer that the complainant had fallen a couple times and that he had tried to get her to leave the apartment. According to this officer, defendant seemed agitated and intoxicated. After waiting for a few minutes, defendant attempted to enter the apartment.

¶ 7. Defendant's attempted entry coincided with the second officer's interview with the complainant, so both officers put defendant in investigative detention. Additional officers then transported defendant back to the police station. Rescue personnel took the complainant to the emergency room.

¶ 8. After both defendant and the complainant left, the officers continued their investigation of the apartment. The first officer observed blood in several locations: on a bloody rag or shirt in the bathroom; in a large puddle on the floor in the center of the bathroom; on the door casing going into the bedroom; and on the side of the mattress in the bedroom. This officer did not see any obvious evidence—such as bloodstains, tissue, or hair fibers—that the complainant struck her head on a countertop or furniture corner in the apartment. Similarly, the

3

second officer did not find any indication that the complainant fell and injured her head. He did observe shoes near the bathroom door.

¶ 9. As a result of the officers' investigation, the State charged defendant with domestic assault pursuant to 13 V.S.A. § 1042. Defendant's jury trial was held on August 7, 2014, in the Chittenden County Superior Court, Criminal Division.

¶ 10. The State's evidence included the 911 recording, the responding officers' testimony, the complaint's testimony, and photographs of the complainant and the apartment. Although the complainant testified for the State, she testified that defendant did not cause her injuries. The complainant explained that, rather than being struck by defendant, she tripped over her shoes while entering the bathroom and hit her head on the ceramic tiles. She said that she sometimes blacks out when she drinks; as a result, she did not remember anything leading up to her fall, she did not recall making the 911 call, she did not recollect reporting that she was struck, and she only vaguely remembered the trip to the hospital. She acknowledged that her trial testimony differed from her previous reports, but said that, as the days progress after a blackout, snippets of her memory return, like her memory of tripping.

¶ 11. At the conclusion of the State's case, defendant made an oral motion pursuant to Vermont Rule of Criminal Procedure 29(a) on the ground that the State could not establish that defendant caused the complainant's injury. The trial court denied the motion based, at least in part, on the substantive evidence contained in the 911 recording.

¶ 12. Defendant's case consisted solely of his own testimony. He testified that he did not strike the complainant. Instead, he said that complainant was drunk and became verbally aggressive with him, so he left her alone. After she quieted down for several minutes, he went to investigate and discovered her on the bathroom floor with a pool of blood around her head. Defendant then called 911, and the complainant grabbed the phone from him. According to defendant, after she grabbed the phone, he went down to the vestibule to meet the police.

4

¶ 13. The jury convicted defendant of domestic assault under 13 V.S.A. § 1042. Subsequently, defendant filed a combined post-trial motion for judgment of acquittal and for a new trial. In his combined motion, defendant renewed his argument that the State did not establish that defendant caused complainant's injury, claimed the State did not build a proper foundation for the admission of the 911 recording as an excited utterance, and advanced other arguments not at issue in this appeal. The trial court denied both motions, again pointing to the substantive evidence contained in the 911 recording and noting that defendant did not object to the admittance of the 911 recording as an excited utterance.

¶ 14. On appeal, defendant raises four arguments: first, defendant argues the court abused its discretion by admitting the 911 recording; second, defendant claims that, because the second officer's testimony failed to impeach the complainant, it was hearsay and unfairly prejudicial; third, defendant contends the evidence failed to establish that he recklessly caused injury to the complainant; and fourth, defendant argues the State mischaracterized the evidence and made improper remarks during its closing statement.

I. The 911 Recording

¶ 15. Defendant's initial argument concerns the admission of the 911 recording. He contends the court abused its discretion by admitting the 911 recording for three reasons: (1) the State did not lay a proper foundation to authenticate the identity of the 911 caller; (2) the State failed to establish a foundation for the admission of the 911 recording as an excited utterance; and (3), because the complainant did not remember the 911 recording, defendant could not cross-examine her, which violated the Confrontation Clause of the Sixth Amendment of the United States Constitution. We address each in turn.

¶ 16. During the trial, the trial court allowed the State to authenticate the identity of the 911 caller using the testimony of the 911 dispatcher and one of the officers. The officer testified that he recognized the complainant's voice on the 911 recording, based on a prior meeting with

5

the complainant and either a voicemail or a phone conversation. Then, the court allowed defendant to voir dire the officer; defendant asked a single question about the content of the alleged voicemail. The court subsequently admitted the entire 911 recording.

¶ 17. On appeal, defendant argues that the officer's testimony did not establish the identity of the 911 caller with "reasonable certainty" because the officer met with the complainant only once, the State never established that the alleged voicemail or phone conversation was actually from complainant, and the voicemail or phone conversation occurred roughly seven months prior to trial. By contrast, the State argues that, because the defendant failed to offer a timely or sufficiently clear objection to the admission of the 911 recording at trial, we should review defendant's arguments under a plain error standard. In the alternative, the State claims that no error, let alone plain error, occurred because the caller's identity was sufficiently authenticated.

¶ 18. We need not determine whether defendant properly preserved his authentication claim. Based on the record, the trial court did not abuse its discretion when it determined a proper foundation existed to authenticate the 911 caller's identity and, as result, no error occurred.

¶ 19. We review issues regarding the admissibility of evidence for abuse of discretion. State v. Corliss, 168 Vt. 333, 337, 721 A.2d 438, 442 (1998). Authentication is a condition precedent to admissibility requiring that sufficient evidence exist to "support a finding that the matter in question is what its proponent claims." V.R.E. 901(a). Because the preliminary question of fact is one of conditional relevance, once the court decides sufficient evidence exists to support a jury finding, the definitive resolution of authenticity is left to the jury. 2 McCormick, McCormick on Evidence § 227, at 54 (4th ed. 1992) ("[I]f a prima facie showing is made, the writing or statement comes in, and the ultimate question of authenticity is left to the

6

jury."). Ultimately, "the test for authenticating evidence is not a demanding one." State v. Muscari, 174 Vt. 101, 107, 807 A.2d 407, 413 (2002).

¶ 20. In the case of a recording, Vermont Rule of Evidence 901(b)(3) provides an illustrative example of evidence sufficient to support authentication: a person who first hears a voice on either a mechanical or electronic recording may, by opinion, identify the speaker based "upon hearing the voice at any time under circumstances connecting it with the alleged speaker." V.R.E. 901(b)(5). Similarly, in State v. Mecier, we found that a deputy who testified that he was "familiar with and recognized the defendant's voice" provided enough "reasonable certainty" for the jury to believe the tapes' contents were accurate. 138 Vt. 149, 152-53, 412 A.2d 291, 293-94 (1980).

¶ 21. In this case, that reasonable certainty exists. The officer testified that he met the complainant once and heard her voice on the phone, either on a voicemail or during a phone conversation. He then indicated that he had listened to the 911 recording and that he recognized the voice as the complainant's. This is sufficient evidence to "support a finding that the matter in question is what its proponent claims." V.R.E. 901(a); see Mecier, 138 Vt. at 152-53, 412 A.2d at 293-94. Moreover, although the complainant's self-identification on the 911 recording was not, by itself, sufficient to authenticate her identity, when combined with the officer's testimony, it provided additional circumstantial evidence authenticating her identity. See 2 McCormick, supra, § 226, at 51. Given the undemanding test for authenticating evidence, no abuse of discretion occurred when the court determined that sufficient evidence existed to authenticate 911 caller's identity.

¶ 22. Defendant's second assertion involving the 911 recording is that the State failed to establish a foundation to admit the recording as an excited utterance. Defendant contends that, as the proponent of the 911 recording, the State must have proved that the recording fits within an exception to the hearsay rule. The State counters that we should review defendant's claim for

7

plain error and that, in any case, the 911 recording fits within the excited utterance exception to the hearsay rule. The trial court held, in its post-trial decision denying defendant's combined motions, that defendant did not make a timely objection to the admission of the 911 recording. Moreover, although the trial court acknowledged that it did not discuss the basis for the admission of the 911 recording at trial, it held that the recording met the requirements for an excited utterance.

¶ 23. We agree with the trial court that defendant did not move to strike or timely object to the admission of the 911 recording as an excited utterance, see V.R.E. 103(a)(1); instead, defendant objected solely based on authentication concerns. Moreover, after the 911 recording was already admitted, defendant appeared to specifically disavow any concerns that the 911 recording was not an excited utterance. As a result, we review defendant's second argument for plain error. See V.R.Cr.P. 52(b).

¶ 24. Plain error can be found "only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Hoadley, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986). We will reverse only where we find that the error seriously affected defendant's substantial rights and "had an unfair prejudicial impact on the jury's deliberations." State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337. Plain error analysis is fact based, and "[o]bviousness of the error and prejudice to the defendant are the key factors." State v. Weeks, 160 Vt. 393, 400, 628 A.2d 1262, 1266 (1993). Because the 911 recording fell well within the bounds of the excited utterance exception, we hold that no plain error occurred.

¶ 25. The rule against hearsay prohibits the admission of out-of-court statements offered to prove the truth of the matter asserted. State v. Carter, 164 Vt. 545, 549, 674 A.2d 1258, 1262 (1996); see V.R.E. 801(c) (defining hearsay); V.R.E. 802 (prohibiting hearsay unless

exception applies). An exception to the hearsay rule applies to statements made while "under the stress of excitement caused by the event or condition." V.R.E. 803(2). Under the exception, the contents of an excited utterance are considered trustworthy because a "person's powers of reflection and fabrication will be suspended when she is subject to the excitement of a startling event." In re Peters, 171 Vt. 381, 391, 765 A.2d 468, 476 (2000). Although the statement "need not be made immediately after the startling event," the declarant's excited condition, which is the key inquiry, must be caused by the startling event. State v. Jackson, 2008 VT 71, ¶ 9, 184 Vt. 173, 956 A.2d 1126.

¶ 26. The 911 recording provides direct evidence that the complainant was in an excited condition, distraught and crying. Moreover, regardless of when the alleged assault occurred, the 911 recording reveals that she was still in an agitated condition when she called the 911 operator to seek an ambulance. Compare State v. Shaw, 149 Vt. 275, 281, 542 A.2d 1106, 1109 (1987) (holding statements that occurred two or three hours after sexual assault were excited utterances because declarant's hysterical condition was caused by assault), with Jackson, 2008 VT 71, ¶ 13 (holding no excited condition existed when declarant's prefatory statement evinced reflective thought). This evidence was corroborated by the officer's testimony that he found complainant while she was still on the phone with the 911 dispatcher and by defendant's testimony that the complainant called 911 as a result of her injuries.

¶ 27. We are not persuaded by defendant's reliance on State v. Spaulding, 2014 VT 91, 197 Vt. 378, 103 A.3d 487. In Spaulding, this Court held that a declarant must specifically avow to the reliability of a past recollection recorded for the statement to be admitted. Id. at ¶ 25. Our analysis turned, in part, on the difficulty in proving the reliability of a past recollection recorded without the declarant's explicit avowal of the reliability. Id. at ¶¶ 26-27. By contrast, the reliability of an excited utterance does not turn on the declarant's avowal, but on whether the declarant was subject to a startling event that affected his or he ability to prevaricate in the

9

moment.  In re Peters, 171 Vt. at 391, 765 A.2d at  476.  In this case, sufficient evidence existed for the court to determine that the complainant was in an excited condition caused by the alleged assault.   The trial court did not commit an error, let alone an obvious error, when it admitted the 911 recording as an excited utterance.

¶ 28.   Similarly, no plain error occurred that violated defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004).   The protections of the Confrontation Clause do not apply, however, if "the declarant appears for cross-examination at trial."  Id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)).

¶ 29.   On appeal, defendant asserts that, because the complainant testified that she could not remember portions of the night and that she did not recall making the 911 call, she was unavailable for cross-examination.   Consequently, according to defendant, admitting the 911 recording violated his constitutional right to confront the witness against him.  We disagree.

¶ 30.   Even if the out-of-court statement is testimonial in nature, Crawford applies only if the declarant is unavailable to be cross-examined at trial.  Crawford, 541 U.S. at 59 n.9.  In this case, the complainant was available at trial and was cross-examined by defendant.   Her testimony at trial that she could not recall making the 911 call does mean that she was constitutionally unavailable.  See United States v. Owen, 484 U.S. 554, 559 (1988) (holding witness's testimony that he could not recall previous out-of-court identification did not violate Confrontation Clause because witness was available for cross-examination). "Successful cross-examination is not the constitutional guarantee," id. at 560; rather, the guarantee focuses on the

defendant's opportunity to cross-examine the witness. See State v. Paquette, 146 Vt. 1, 5, 497 A.2d 358, 361 (recognizing that effectiveness of cross-examination was limited by declarants' inability to recall events in their out-of-court statements, but holding that no Confrontation Clause violation occurred because witnesses could be cross-examined). That opportunity was available here; thus, no plain error occurred.

## II. The Complainant's Prior Statement to the Second Officer

¶ 31. Defendant next contends the court erred by admitting the second officer's testimony that, when he first interviewed the complainant on New Year's Eve, she said she was struck by defendant's closed fist.

¶ 32. During the trial, as the officer began to describe his initial interview with the complainant, defendant objected on hearsay grounds. At the subsequent bench conference, the State argued that the complainant's statements to the officer were being used to impeach her trial testimony and, as a result, were not hearsay. The trial court concluded the interview could be admitted for impeachment purposes as long as a limiting instruction was given to the jury. The trial court then gave an advisory warning to the jury, which defendant accepted without making a motion to strike or a timely objection. The State's subsequent questioning of the officer followed:

> STATE. Would you please tell the jury what [complainant] reported to you?
> OFFICER. She reported that the defendant hit her with something but she was not sure what.
> STATE. Okay. What else did she report about how she was injured?
> OFFICER. She reported that she fell, but she doesn't remember hitting her head.
> . . .
> STATE. Okay.
> OFFICER. My interview was interrupted at this point, or around this time, and I had to go back and ask questions again. But she then told me that the defendant punched her with a closed fist.

11

¶ 33.     On appeal, defendant argues that the complainant's prior comments to the officer are hearsay and, as a result, should have been excluded by the trial court.  Moreover, because the complainant testified at trial that she fell, defendant argues that any probative value of the prior statement to the officer was outweighed by the prejudicial effect of the officer's testimony.  The State disagrees and reiterates its argument that the complainant's prior statements to Officer Kitchen were not hearsay because they were used to impeach the complainant's trial testimony.  In addition, the State claims that defendant's arguments were not properly preserved on appeal and should not be considered or that, at minimum, this Court should review defendants' claims for plain error.

¶ 34.     We hold that the complainant's prior inconsistent statements could be used to impeach her trial testimony and, as result, the statements were not hearsay.  Moreover, although the trial court did not strictly comply with the statutory and precedential requirements governing admittance of impeachment evidence, we hold that no plain error occurred.

¶ 35.     An out-of-court statement is not hearsay if it is admitted for a purpose other than substantive proof of the statement's contents.  For example, an out-of-court statement may be admitted if it is used to impeach a witness; that is, the extrinsic statement may be used to demonstrate that the witness previously said something inconsistent with his or her testimony, but it may not be used as evidence of the facts contained in the statement.  1 McCormick, supra, § 34.  The theory behind admitting such statements for impeachment purposes is that a witness's vacillation between two positions is relevant to the witness's credibility, regardless of the information in the inconsistent out-of-court statement.  Id.

¶ 36.     Vermont Rule of Evidence 613(b) governs the admission of out-of-court statements used to impeach a witness and states: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon."

12

We have noted that Rule 613(b) contains "strict limits against the admission of the statement itself," Spaulding, 2014 VT 91, ¶ 34, but our case law interpreting Rule 613(b) is limited. State v. Danforth, 2008 VT 69, ¶ 15, 184 Vt. 122, 956 A.2d 554. Similarly, although 12 V.S.A. § 1642 explicitly allows impeachment of one's own witness, we have interpreted this statute sparingly.

¶ 37. As our law stands, only two requirements are imposed by Rule 613(b) and § 1642. First, under Rule 613(b), the "statements sought to be used for impeachment must first be brought to the attention of the witness and an opportunity provided for explanation or denial." State v. Young, 139 Vt. 535, 535, 433 A.2d 254, 256 (1981); see also 1 McCormick, supra, § 37, at 122-23 (noting this foundation requirement attempts to prevent jury from treating the extrinsic statement as substantive evidence). Second, under § 1642, the witness must be apprised of his or her inconsistent statements and the trial court must determine that the witness is adverse to the impeaching party. Neither requirement appears to have been fully satisfied in this case.

¶ 38. For example, the State sought to impeach the complainant's trial testimony with the statements that she made to the officer during their initial interview. But the State failed to specifically ask the complainant about her conversation with the officer; instead, the State merely provided the complainant with an opportunity to explain "prior reports" she made without identifying her conversation with the officer. By contrast, in the context of Federal Rule of Evidence 613 (a nearly identical statute),[1] the U.S. Court of Appeals for the Second Circuit upheld the district court's decision that the witness could be impeached only with the witness's verbatim statements. United States v. Bithoney, 472 F. 2d 16, 26 (2d Cir. 1973). Moreover, in this case, when the complainant was on the stand, the State did not provide notice to the court or

---

[1] Federal Rule of Evidence 613(b) is virtually identical to Vermont Rule of Evidence 613(b), except that the Federal Rule says "interrogate the witness thereon" while Rule 613(b) says "interrogate him thereon."

13

to defendant that it intended to impeach the complainant's statements with later testimony. Cf. United States v. Surdow, 121 F.App'x 898, 900 (2d Cir. 2005) (noting that impeaching party should, "at very least, inform[ ] the court and opposing counsel, at the time the witness testifies, of the intention to introduce impeaching extrinsic evidence" (quotations omitted)(emphasis in original)).

¶ 39.   Likewise, the trial court did not make a finding that the complainant was an adverse witness to the State under 12 V.S.A. § 1642. As we noted in Cross v. Passumpsic Fiber Leather Co., when the "question of the witness' hostility was not referred to" in the transcript, it becomes more difficult to assume that the trial court determined the witness was hostile. 90 Vt. 397, 404, 98 A. 1010, 1013 (1916). In this case, although the trial court may have presumed that the complaint was hostile because she testified that she fell and that she could not recall the surrounding events, it did not express an opinion about her hostility on the record.

¶ 40.   In any case, we need not decide whether the requirements of Rule 613(b) and 12 V.S.A. § 1642 were strictly fulfilled, because defendant did not properly preserve his arguments relating to either provision.[2] At trial, defendant objected on the basis of hearsay and continues to argue on appeal that the officer's testimony does not fall under a hearsay exception. But, as explained above, the officer's testimony was not hearsay because it was used to impeach the complainant's trial testimony. The complainant's vacillation between the cause of her injury—either defendant's fists or a fall—was relevant to her credibility, regardless of the truth of the matter asserted in her out-of-court statement. See 1 McCormick, supra, § 34. Further, the

---

[2] Similarly, although there may be additional concerns when a prosecutor impeaches his or her own witness, defendant did not raise any objection on that basis. Compare State v. Miner, 128 Vt. 55, 65, 258 A.2d 815, 821 (1969) (finding prosecutor could impeach his witnesses by reference to prior testimony at grand jury inquest), with 1 McCormick, supra, § 38, at 129 (noting a sizeable body of precedent that prosecutor "may not employ a prior inconsistent statement to impeach a witness as a mere subterfuge or for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible" (quotations omitted)).

court properly employed a curative instruction to alleviate any "problem that the jury would mistake the statement for truth." State v. Santelli, 159 Vt. 442, 448, 621 A.2d 222, 225 (1992). And finally, even if the officer's testimony about the complainants statements was impermissible hearsay, the information was cumulative to the 911 recording. See Jackson, 2008 VT, ¶ 16 (declining to reverse on plain error because witness's inadmissible hearsay statement was cumulative). For these reasons, we conclude the admission of the complainant's prior inconsistent statement does not constitute plain error.

### III. Defendant's Motion for Judgment of Acquittal

¶ 41. Defendant's next contention is that the trial court abused its discretion when it denied defendant's motion for a judgment of acquittal under Vermont Rule of Criminal Procedure Rule 29. Specifically, defendant argues that no evidence exists that defendant struck complainant above the eye or that defendant acted recklessly. Moreover, defendant contends no causal connection links the complainant's injury to defendant's alleged acts. The State demurs to this characterization of the evidence and maintains that enough evidence was presented at trial for the jury to reasonably infer that defendant caused the complainant's injury by hitting her.

¶ 42. The trial court denied defendant's motion for acquittal at the close of the State's evidence and denied defendant's renewed motion after the jury verdict. In both cases, the trial court focused on the information provided in the 911 recording. The trial court pointed out that, in the 911 recording, complainant identified defendant and stated that she was struck by defendant's fists. In combination with the officers' testimony regarding the complainant's injury and the photographic evidence, the trial court found that enough evidence existed to reasonably show that defendant struck complainant and caused her injury. We agree.

¶ 43. Our review of the trial court's denial of defendant's motion for acquittal is governed by "an exacting standard." State v. Myers, 2011 VT 43, ¶ 41, 190 Vt. 29, 26 A.3d 9. We must affirm the trial court's denial of the motion for acquittal if "the evidence, when viewed

15

in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Delisle, 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (quotations omitted). A judgment of acquittal is proper only if the State has failed to put forth any evidence to substantiate a jury verdict. State v. Couture, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999).

¶ 44. Defendant was charged with domestic assault pursuant to 13 V.S.A. § 1042, which prohibits a person from "wilfully or recklessly caus[ing] bodily injury to a family or household member." As we noted above, during the 911 recording, the complainant identified defendant and stated that she was "beaten" with his "fists." Further, the evidence contained in the 911 recording is supported by the responding officers' testimony and the photographs depicting the complainant's injuries. A reasonable trier of fact could conclude from this evidence that defendant caused complainant's injury. See State v. West, 164 Vt. 192, 197, 667 A.2d 540, 543 (1995) (noting conviction was sufficiently supported by excited utterance that identified perpetrator, by officer's observations, and by photograph of complainant's injuries). Similarly, the evidence was sufficient to establish that, by striking the complainant, defendant " 'consciously disregard[ed] a substantial and unjustifiable risk' " of bodily injury. See State v. Bolio, 159 Vt. 250, 253, 617 A.2d 885, 887 (1992) (quoting Model Penal Code § 2.02(c) (1985) definition of "recklessly") (emphasis in original). Finally, although defendant does not specifically challenge these elements of § 1042, we note that the evidence admitted could reasonably convince a jury that the cut above the complainant's eye was a "bodily injury" under 13 V.S.A. § 1021(2) and that the complainant was a household member pursuant to 15 V.S.A. § 1101(2). Because the evidence presented at trial substantiates the jury's verdict, we hold that the trial court properly denied defendant's motion for acquittal.

## IV.  The State's Closing Argument

¶ 45.  Defendant's final argument is that the State mischaracterized the evidence during its closing statement to the jury.

¶ 46.  Part of the prosecutor's closing argument contained this statement:

> [Complainant's] testimony today is inconsistent with statements that she's made in the past.  It's inconsistent with the 9-1-1 call that night, it's inconsistent with her statement to the police officer that night, and it's inconsistent with the statement that she made earlier this week when we met with her.  That night, [complainant] reported that the defendant hit her with her [sic] fist on the 9-1-1 call. And that's also what she reported to the officer.  And on Monday of this week, what she had reported is that she had no recollection of how she was injured.

¶ 47.  Defendant claims that this portion of the prosecutor's closing argument improperly characterized impeachment evidence as substantive evidence and incorrectly branded complainant's lack of memory during trial as an inconsistency.  Further, defendant argues that the prosecutor impermissibly referred to the substance of a private meeting when she said, "[I]t's inconsistent with the statement that [complainant] made earlier this week when we met with her."  Defendant acknowledges that he did not object to these statements at trial, but argues that plain error exists.

¶ 48.  We hold that these statements do not constitute plain error, if error at all.  Under our precedent, "[c]omments made during a closing argument will not amount to plain error unless they are so manifestly and egregiously improper that there is no room to doubt the prejudicial effect."  State v. Martel, 164 Vt. 501, 506, 670 A.2d 845, 849 (1995).  Although counsel "are entitled to a good deal of latitude in their closing arguments, they are 'bound to keep within the limits of fair and temperate discussion . . . circumscribed by the evidence in the case.' "  State v. Rehkop, 2006 VT 72, ¶ 35, 180 Vt. 228, 908 A.2d 488 (quoting State v. Hannett, 54 Vt. 83, 89 (1881)).

17

¶ 49. In this case, the prosecutor confined her closing arguments "to the evidence of the case and inferences properly drawn from it." State v. Lapham, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). As described above, the 911 recording and the complainant's statement to the police officer were properly admitted during the trial. Likewise, the complainant testified that, during a meeting with the State's Attorney prior to trial, she said that she could not remember how her injury occurred. During the closing arguments, the prosecutor merely pointed to this properly admitted evidence to demonstrate complainant's equivocal explanations for her injury. The prosecutor did not tell the jury to treat the 911 recording, complainant's prior statements, or complainant's conversation with the state's attorney as substantive evidence that defendant committed the acts;[3] instead, she described the 911 recording and complainant's prior statements to the officer as "inconsistent" with the complainant's trial testimony and the complainant's statements during her meeting with the State's Attorney. The prosecutor neither strayed from the properly admitted evidence nor suggested that she had personal evidence of defendant's guilt. Based on the evidence admitted, it was not manifestly improper for the prosecutor to suggest to the jury that complainant's trial testimony was inconsistent with prior explanations for her injury.

Affirmed.

FOR THE COURT:

_____

Associate Justice

_____

[3] We note that the prosecutor could have asked the jury to consider the portion of the 911 recording that was an excited utterance as substantive evidence. Supra, ¶¶ 24-26.

18