NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 21

No. 22-AP-090

| | |
|---|---|
| Katharine Davis | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Rama Davis | January Term, 2023 |

John R. Treadwell, J.

Samuel H. Angell of Angell Mediation, P.L.C., Brattleboro, for Plaintiff-Appellant.

Sharon J. Gentry of Costello, Valente & Gentry, P.C., Brattleboro, for Defendant-Appellee.

James M. Rodgers of James M. Rodgers, Attorney at Law, P.L.L.C., Brattleboro, for Child, S.D.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** Mother appeals the family division's order denying her motion to permanently suspend father's parent-child contact with the parties' minor son. Mother argues that the court erred in denying her motion to admit into evidence out-of-court statements made to her and other adults by son when he was four years old that allegedly demonstrated sexual abuse by father. We conclude that the court did not abuse its discretion in excluding son's hearsay statements from the parent-child contact hearing, and therefore affirm.

I.

¶ 2. Mother and father married in 2012 in Oregon and later moved to Vermont to live near mother's family. Their only child, a son, was born in April 2015. They separated shortly

after he was born. Mother remained in Vermont and father moved to Massachusetts. In August 2017, mother filed an abuse-prevention complaint against father. The parties stipulated to a one-year relief-from-abuse (RFA) order, which was issued on August 30, 2017. The order contained no findings by the court. Mother subsequently filed for divorce in September 2017.

¶ 3. Following a contested hearing, the family division issued a final divorce order in December 2018. The court found that the parties had a deeply dysfunctional relationship. Mother described father as depressed, angry, and, at times, suicidal, while father testified that mother was controlling and would relentlessly berate and verbally abuse him in a loud voice. The court found that mother and father were physically abusive toward one another during the marriage, although neither had ever been physically abusive toward son. In awarding parental rights and responsibilities, the court found that the parties were approximately equally situated with regard to most of the statutory best-interests factors; however, mother was the primary caregiver and son had a strong relationship with his maternal grandparents. The court therefore awarded mother sole legal and physical parental rights and responsibilities.

¶ 4. At the time of the divorce, father was limited to supervised visitation with son pursuant to the August 2017 RFA order. Mother asked the court to award father very limited parent-child contact and proposed that father be allowed unsupervised visitation only after completing an anger-management program as well as two parenting classes. The court concluded that the evidence of father's behavior during supervised visits did not support mother's proposal. It instead imposed a parent-child contact schedule that gradually increased father's visitation to one evening and one overnight visit each week. The court declined to extend the August 2017 RFA order, concluding that the evidence did not support a finding of danger of further abuse of mother by father.

¶ 5.     In April 2019, shortly after overnight visits with father began, mother filed a motion to immediately suspend father's contact with son.[1]  Mother asserted that son had made statements to her indicating that father had sexually abused him.  Her motion was supported by an affidavit listing various statements that son had allegedly made to her.  The court issued an interim order in which it suspended the existing parent-child contact arrangement and ordered father to instead have supervised visitation with son for one hour each week.  The parties subsequently agreed that a guardian ad litem (GAL) and an attorney should be appointed for son.

¶ 6.     In May 2019, mother filed a motion to admit hearsay statements by son at the hearing on her motion to suspend parent-child contact, pursuant to Vermont Rule of Evidence 804a.  In response, son's attorney moved to exclude son from testifying at the hearing.  The court held a preliminary hearing regarding the admissibility of the statements in July 2019.  Mother presented testimony from herself, a social worker from the Department for Children and Families, son's maternal grandmother, mother's boyfriend, and son's therapist, Claire LeMessurier.  Each testified to one or more hearsay statements by son describing conduct by father that could constitute lewd and lascivious conduct or sexual assault of son.

¶ 7.     In a written decision issued in August 2019, the court concluded that son's hearsay statements were not admissible under Rule 804a, because son was not available to testify in court or under Vermont Rule of Evidence 807.  See V.R.E. 804a (permitting admission of hearsay statements by child who is putative victim of sexual assault if court finds, among other criteria, that child is "available to testify in court or under Rule 807").  The court reasoned that Rule 807 was inapplicable to this proceeding.  It further held that it would not allow son to testify under

---

[1]  Mother also filed three separate complaints against father for relief from abuse on behalf of son in April and May 2019.  The court denied the first complaint, explaining that mother should seek relief in the divorce case.  Mother withdrew her second complaint at the final hearing, and the third complaint was dismissed on the merits.

Vermont Rule for Family Proceedings 7(d) because the potential detriment to son outweighed the probative value of his testimony. The court explained:

> [The GAL] and [son's attorney] were unequivocal—neither would support the court receiving testimony from [son] no matter the level of accommodation provided. Additionally, both [son's attorney] and [the GAL] clearly stated that the potential detriment to [son] from being called as a witness outweighed the probative value of his testimony. The court finds that the opinions of the persons appointed to represent [son] are entitled to very great weight in this proceeding.

The court reasoned that because it would not admit son's testimony under Family Rule 7(d), son was unavailable to testify for purposes of Rule 804a, making his hearsay statements inadmissible under that rule.

¶ 8. The court subsequently granted a motion filed by son's attorney to appoint a neutral psychological expert to evaluate son and make recommendations to the court regarding parent-child contact. In August 2019, it appointed Dr. David Mantell to conduct the evaluation.

¶ 9. The same month, the court held a hearing on mother's motion to modify parent-child contact. In September 2019, the court issued an order finding that there had been a real, substantial, and unanticipated change in circumstances that justified modification of the existing contact order. Specifically, it found that since the time of the divorce, son had begun exhibiting symptoms of post-traumatic stress disorder (PTSD) as well as behavior that was consistent with sexual victimization and had identified father as the perpetrator. The court stated: "To be clear, based on Ms. LeMessurier's testimony and the other testimony presented, the court is not finding that defendant has abused [son] but the court is finding that [son] is reporting that his father has abused him." Although the court found that the jurisdictional prerequisite for modifying the order was satisfied, it determined that it lacked sufficient information to assess son's best interests. It noted that mother asserted that father had abused son but "there is no evidence in the record from which this court can find that defendant engaged in such conduct." It therefore stated that it would hold a further evidentiary hearing on mother's motion after son had been evaluated.

4

¶ 10. Dr. Mantell's final evaluation report was submitted to the court in March 2021. The report contained most, if not all, of the statements of son that mother had sought to admit in support of her motion.

¶ 11. The court scheduled an evidentiary hearing on parent-child contact for April 2021. Prior to the hearing, mother filed a notice that she intended to offer son's hearsay statements under Rule 804a. She argued that it was "now incumbent on the [c]ourt definitively to determine whether or not the [d]efendant sexually abused his son." She argued that son's hearsay statements were necessary for that purpose and that son was available to testify. Both father and son's attorney opposed introduction of the hearsay statements. The court treated mother's filing as a motion to reconsider, which it denied, reasoning that it had thoroughly addressed the issue in the prior order, the motion was untimely, and the motion presented no new controlling authority or substantial evidence to justify changing the prior ruling.

¶ 12. Mother, father, and son presented testimony from various witnesses at the three-day modification hearing. Dr. Mantell's interim and final reports were admitted into evidence without objection.

¶ 13. The court issued its final order in December 2021. The court found that son had been seeing Claire LeMessurier, LCMHC, for therapy since May 2019. Mother typically attended son's therapy sessions. LeMessurier encouraged son to make lists of things that father did, which son referred to as the "bad dad" lists. LeMessurier believed that son was victimized from her first meeting with him and believed that physical abuse occurred "but there were never any marks." She recommended that the court permanently suspend all contact between father and son and opposed father having pictures of son.

¶ 14. Mother also believed that son should have no contact with father. Although she stated that she would comply if the court ordered visitation, the court found her not to be credible on this point because she was essentially seeking termination of father's parent-child contact.

5

¶ 15. The court found that mother was present each time son reported sexual or physical abuse by father.[2] Son did not report abuse during three separate forensic interviews in Massachusetts or during a child-protection interview by hospital staff. He was interviewed without his mother on those occasions. In September 2019, Brattleboro police officers met with mother at the hospital. Mother reported that she and son were at the hospital because of matters that had occurred six months earlier in Massachusetts. She told an officer that son "still believed there was white stuff in his tummy." The officer went into the room where son was. Mother bent down and said something to son, who looked up and said, "My Dad put my penis in my mouth."

¶ 16. The court noted Dr. Mantell's opinion that son had been interviewed multiple times and probably could not distinguish between what he had repeatedly reported and what actually happened.[3] Dr. Mantell opined that son's therapist used suggestive techniques that would never be used in a formal forensic interview, and that she played multiple conflicting roles in the family's life. Dr. Mantell opined that some of son's statements about the alleged abuse were realistic and plausible, while others were silly and fantastical. He noted that, although children who have been abused respond in different ways, son did not demonstrate the symptoms of PTSD or behave like most sexually abused children. Son did exhibit behavior problems that could be attributed to being the only child in a high-conflict family in which paternal visitation had been a disputed issue for most of his life. Although Dr. Mantell did not opine on whether sexual abuse had occurred, he identified factors that supported such a finding and factors that weighed against it.

---

[2] Mother testified that son had disclosed abuse on one occasion when she was not present but could not identify when this occurred.

[3] At several points in its lengthy order, the family division recounted testimony by Claire LeMessurier, Dr. Mantell, and others, but did not explicitly credit or reject it. "A recitation of evidence in findings is not a finding of the facts contained in the testimony related and it cannot be so construed." Krupp v. Krupp, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967). Although the court made sufficient findings elsewhere in the order to support its decision, we reemphasize that "when the court is sitting as a finder of fact, it should determine the facts rather than merely recite the testimony offered by the parties." In re M.E., 2019 VT 90, ¶ 20 n.3, 211 Vt. 320, 225 A.3d 633.

¶ 17. In his testimony, father denied ever abusing son. He testified that he wished to co-parent. He had been in therapy for four years. His therapist testified that father did not have a mental-health diagnosis and did not meet criteria for any disorder in the current Diagnostic and Statistical Manual of Mental Disorders. Father's therapist expressed no concerns about father having contact with son.

¶ 18. The court found that the evidence did not support a finding that father sexually or physically abused son. It reiterated its conclusion that son's hearsay statements were inadmissible and concluded that LeMessurier's opinion that son had been abused was not competent evidence. In particular, it found that LeMessurier's techniques were suggestive, idiosyncratic, and not based in science. Further, she testified that her opinions were based in part on a belief that son had PTSD, which turned out not to be supported by the evidence. The court found that son's behaviors were "more consistent with high conflict families," as Dr. Mantell testified. It concluded that the evidence did not support a finding that father was an unfit parent, as would be required to completely terminate parent-child contact.

¶ 19. The court then reviewed the factors set forth in 15 V.S.A. § 665 and found that it was in son's best interests to resume contact with father, although an immediate resumption of physical contact posed a risk of emotional harm to son. The court accordingly ordered the parties to select a reunification therapist to work with the parties, with in-person contact to resume within seven months of the order and overnight visits to resume within one year.

¶ 20. Mother filed a motion to alter or amend the judgment, arguing that the court erred by relying on the statements of son's attorney and GAL in its decision to exclude son's hearsay statements.[4] The court denied the motion, concluding that mother had waived her argument by failing to raise it earlier. The court further concluded that only some of son's statements provided

---

[4] Mother also challenged certain other rulings of the court but did not appeal those issues.

substantial indicia of trustworthiness, and that these statements were not substantially probative of sexual abuse and did not outweigh the detrimental effect to son of testifying. This appeal followed.

## II.

¶ 21.    Mother's primary argument on appeal is that the family division erred in relying on the opinions of son's attorney and GAL to determine that son was unavailable to testify in court and therefore that his hearsay statements were inadmissible under Vermont Rule of Evidence 804a. Mother argues that the statements of the attorney and GAL were not evidence and that there was otherwise no evidence that testifying would be harmful to son. We review the court's evidentiary ruling for abuse of discretion. See State v. Reid, 2012 VT 65, ¶ 20, 192 Vt. 356, 59 A.3d 711 ("The trial court has 'great discretion' in determining whether to admit evidence under [Rule 804a], and we do not reverse its decision unless 'there has been an abuse of discretion resulting in prejudice.' " (quoting State v. Willis, 2006 VT 128, ¶ 20, 181 Vt. 170, 915 A.2d 208)); see also Cameron v. Cameron, 137 Vt. 12, 14, 398 A.2d 294, 296 (1979) (explaining that family court has discretion to permit child testimony on issue of custody if such testimony is in child's best interests); V.R.F.P. 7(d)(2) (stating court "may" allow child testimony in custody proceeding if listed conditions are met).

## A.

¶ 22.    "The rule against hearsay prohibits the admission of out-of-court statements offered to prove the truth of the matter asserted," unless an exception to the rule applies. State v. Kelley, 2016 VT 58, ¶ 25, 202 Vt. 174, 148 A.3d 191; see V.R.E. 801(c) (defining hearsay); V.R.E. 802 (making hearsay inadmissible unless exception applies). One such exception is Rule 804a, which provides that hearsay statements by young children who are the putative victims of sexual abuse are admissible at trial if certain criteria are met.[5] When it was originally promulgated, the rule

---

[5] The rule also applies to such statements by persons with mental illness or intellectual or development disabilities. V.R.E. 804a(a).

applied only to criminal and juvenile-delinquency proceedings. Reporter's Notes, V.R.E. 804a. In 1987, the Court amended the rule to apply in child-neglect proceedings, and in 1993, the Legislature extended the rule to apply in all civil, criminal, or administrative proceedings. Reporter's Notes—1993 Legislative Amendment, V.R.E. 804a; see also 1993, No. 100, § 11. Child-custody proceedings fall within the category of civil proceedings in which the rule applies. See V.R.F.P. 4.0(a)(2) (explaining that rules of civil procedure apply to divorce and parentage actions).

¶ 23. Rule 804a permits the admission of hearsay statements by a child twelve years of age or younger who is the putative victim of sexual assault, lewd or lascivious conduct, or wrongful sexual activity if "the statements were not taken in preparation for a legal proceeding," the child "is available to testify in court or under Rule 807,"[6] and "the time, content, and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a). The court must "specifically find[] at the time they are offered" that the statements meet these criteria. Id. The proponent of the hearsay statements—here, mother—bears the burden of establishing their admissibility under the rule. See State v. Crawford, 2018 VT 119, ¶ 8, 208 Vt. 662, 200 A.3d 1086 (mem.).

¶ 24. In this case, it was undisputed that son was under twelve years old and was the putative victim of sexual abuse, and that his statements were not taken in preparation for a legal proceeding. As discussed below, see infra, ¶ 34, the court found that some, though not all, of the

---

[6] Rule 807 permits a child's testimony to be taken by two-way closed-circuit television or by recorded testimony in certain types of cases. The court found that Rule 807 did not apply in this context because in civil cases, it appeared to be applicable only if the child witness was the alleged victim in a related criminal prosecution for certain sexual crimes. It further determined that neither party had presented expert testimony from which it could "find[] by a minimum standard of preponderance of the evidence that requiring the witness to testify in court and see and hear the party will result in trauma to the witness, caused by the presence of the party, which would substantially impair the ability of the witness to testify," as required by V.R.E. 807(c). The court therefore concluded that son had to be available to testify in court for Rule 804a to apply. Neither party challenges this decision on appeal.

hearsay statements were made under circumstances that indicated their trustworthiness. The admissibility of the statements therefore turned on whether son was "available to testify" regarding these statements under Rule 804a(a)(3).

¶ 25. The purpose of Rule 804a(a)(3)'s availability requirement is "to preserve a defendant's right to confront the child hearsay declarant." State v. Oscarson, 2004 VT 4, ¶ 16, 176 Vt. 176, 845 A.2d 337; see also State v. Gallagher, 150 Vt. 341, 344, 554 A.2d 221, 223 (1988) (stating rule is "specifically aimed at preventing [a Confrontation Clause] violation by guaranteeing that the putative child victim will be available for the defendant's cross-examination"). Although "the Sixth Amendment right to face-to-face confrontation is limited to criminal defendants," Passion v. Dep't of Soc. & Rehab. Servs., 166 Vt. 596, 598, 689 A.2d 459, 462 (1997) (mem.), the Legislature plainly concluded that it was necessary to provide similar protections for individuals accused of child sexual abuse in other contexts. We have accordingly recognized that outside of the criminal context, the purpose of the availability requirement is the same: "to allow for cross-examination, to ensure the reliability of the hearsay statements." In re C.K., 164 Vt. 462, 466, 671 A.2d 1270, 1273 (1995). For this reason, the rule requires the child to be "at least physically present and available for cross-examination." Oscarson, 2004 VT 4, ¶ 19.

¶ 26. However, because this is a child-custody proceeding and the hearsay declarant is the child who is the subject of the proceeding, the court is required to consider other factors in determining availability. Specifically, 15 V.S.A. § 594(b) provides that the child who is the subject of a custody proceeding

> may only be called as a witness if the court finds after hearing that:
>
> (1) the child's testimony is necessary to assist the court in determining the issue before it;
>
> (2) the probative value of the child's testimony outweighs the potential detriment to the child; and
>
> (3) the evidence sought is not reasonably available by any other means.

10

See Davis v. Hunt, 167 Vt. 263, 267, 704 A.2d 1166, 1169 (1997) (holding that 15 V.S.A. § 594(b) applies only to minors who are subjects of custody dispute). Vermont Rule for Family Proceedings 7(d) similarly provides that "[i]f the court finds after hearing" that the child's testimony is necessary, the evidence is not otherwise available, and "the probative value of the testimony outweighs the potential detriment to the child from being called as a witness," "the court may allow the testimony" subject to certain conditions.

¶ 27.    Section 594(b) and Family Rule 7(d), by their plain terms, apply whenever a child may be called as a witness in a custody proceeding, whether as part of a party's case-in-chief or for purposes of cross-examination. See 15 V.S.A. § 594(b) (providing for appointment of counsel "before the minor child is called as a witness in a proceeding"); V.R.F.P. 7(d)(1) (stating that its provisions apply "[i]n any proceeding in which a party seeks to call as a witness a minor child who is a subject of the proceeding"). They make clear that the family division may only exercise its discretion to allow a child who is the subject of a custody proceeding to testify if the three listed factors are satisfied.

¶ 28.    Although Rule 804a does not refer to 15 V.S.A. § 594(b) or Family Rule 7(d), we conclude that in the context of a custody proceeding, the family division must consider the factors contained in these provisions in determining whether a child declarant is "available to testify" under the Rule 804a hearsay exception. We reach this conclusion for two reasons.

¶ 29.    First, as explained above, the purpose of the availability requirement in Rule 804a is to allow the person who is accused of sexual abuse to cross-examine the hearsay declarant. The court must therefore determine at the time the evidence is offered whether the person will actually be permitted to invoke that right—that is, whether the court will allow the child to testify under 15 V.S.A. § 594(b) and Family Rule 7(d) if that person seeks to call the child to the stand. If the court does not make this determination at the outset, the person accused of abuse could be caught in a trap wherein the hearsay statements are admitted into evidence on the basis that the child is

11

physically present, but the defense is later prevented from challenging the statements through cross-examination due to a decision by the court that it would be too psychologically harmful for the child to testify.[7] In such a scenario, the right of cross-examination that Rule 804a seeks to protect would be illusory. See In re K.U., 140 P.3d 568, 575 (Okla. Civ. App. 2006) (reversing adjudication that father deprived children of proper parental care where trial court admitted six-year-old daughter's hearsay statements of sexual abuse without corroboration, finding that she was "available to testify" because she was physically present, but later refused to allow father to cross-examine daughter because it would cause her trauma; court essentially found child unavailable and therefore under Oklahoma rule, corroboration of alleged act was required to admit hearsay statements).

¶ 30. Second, even in non-child-custody proceedings, a witness's availability may be affected by their mental state. The broader hearsay exception contained in Vermont Rule of Evidence 804 defines "unavailability as a witness" to include situations where the witness is exempted from testifying or does not testify due to privilege, refusal to testify, lack of memory, physical or mental infirmity, death, or physical absence despite a party's reasonable effort to procure them. V.R.E. 804(a). In Oscarson, we held that the availability requirement for Rule 804a is not automatically satisfied by a showing that the child is "not unavailable" as measured by the criteria in Rule 804; the child's physical presence is still required. 2004 VT 4, ¶¶ 15-16 (rejecting State's argument that it did not have to physically produce child declarant who was otherwise capable of testifying at trial to satisfy Rule 804a). But the bases for unavailability listed in Rule 804 may be relevant to a determination of availability in a given case. For example, if a child were

---

[7] In a criminal or delinquency proceeding, the defendant must move to compel the child to testify to invoke the right of cross-examination. See V.R.E. 804a(b); Oscarson, 2004 VT 4, ¶ 19 (stating that to trigger right of cross-examination in criminal trial, defendant must move to compel child to testify pursuant to Rule 804a(b)). The rule does not contain a similar requirement for non-criminal proceedings. For this reason, we conclude that father did not have to move to compel son to testify to trigger the analysis under 15 V.S.A. § 594(b) and Family Rule 7(d).

physically present in the courtroom but unable to speak due to physical or mental infirmity, a court could find that he was not "available to testify" for purposes of Rule 804a. Similarly, courts in other jurisdictions have found child victims of abuse to be unavailable to testify based on a showing that testifying would cause the children psychological harm. See, e.g., In re Tayler F., 995 A.2d 611, 626 (Conn. 2010) ("[W]e conclude that a trial court properly may conclude that a child is unavailable if there is competent evidence that the child will suffer psychological harm from testifying."); In re O.A.W., 2007 MT 13, ¶¶ 34, 36, 153 P.3d 6 (finding children unavailable to testify about abuse by parents because it would be extremely traumatic for them); In re K.U., 140 P.3d at 575 ("[T]hough the child may be physically present, as K.U. was here, she was unavailable as a witness if due to an existing infirmity (such as susceptibility to trauma from testifying) the proponent is not able to present a confrontable witness's testimony.").[8] These decisions demonstrate that, even absent 15 V.S.A. § 594(b) and Family Rule 7(d), the potential psychological effects on a putative child victim may impact that child's availability to testify.

¶ 31.    In sum, because § 594(b) and Family Rule 7(d) govern testimony by a minor who is the subject of a custody proceeding, and the admissibility of a child's hearsay statements under Rule 804a is conditioned on the child being available to testify in court, we conclude that the family division appropriately considered the factors in § 594(b) and Rule 7(d) to determine whether son would be available to testify under Rule 804a.[9]

---

[8]   As the Supreme Court of Connecticut noted in In re Tayler F., there is limited caselaw on this point, which "may evidence a disfavor of applying this rule outside the criminal context or may be explained in part by rules in numerous jurisdictions that do not require the child declarant to be unavailable." 995 A.2d at 626 n.8 (noting that as of 2010, "[t]wenty states allow for [child hearsay] exceptions regardless of whether the child witness is or is not available to testify; four states allow the exceptions only if the child is available to testify; and eight states allow the exceptions only if the child is unavailable to testify." (quotation omitted)). Vermont is in the small minority of states that allow the exception only if the child is available, which places the burden on the proponent to demonstrate such availability.

[9]   Father indicated that he did intend to call son to testify if the statements were admitted.

13

¶ 32. We therefore turn to mother's main argument on appeal, which is that it was inappropriate for the court to consider the statements of son's attorney and the GAL in weighing the factors set forth in § 594(b) and Family Rule 7(d). We see no error. First, Family Rule 7(d) specifically contemplates that the child's attorney and the GAL will assist the court in determining whether a child should testify. See V.R.F.P. 7(d)(1) (stating court shall hold hearing to determine whether to allow child to testify and, in divorce or parentage case, shall appoint attorney and GAL "to assist the court in that determination"). As the Reporter's Notes to the rule explain, the best interests of the child, rather than the child's procedural rights, are the primary concern in a custody dispute. Reporter's Notes, V.R.F.P. 7. The rule accordingly modifies the statute to require appointment of an attorney and GAL before the court decides whether to allow the child to testify. Id. "The guardian ad litem, and the attorney, . . . will participate in the hearing held on whether or not the child should testify." Id.[10] The court therefore properly solicited the positions of the GAL and the child's attorney in determining whether son could be called as a witness.

¶ 33. We reject mother's claim that the court violated the rules restricting testimony by attorneys and GALs by requesting and relying on their positions regarding whether son should testify. Cf. Lumbra v. Lumbra, 136 Vt. 529, 533, 394 A.2d 1139, 1142 (1978) (explaining that attorney may not testify in client's cause); Gilbert v. Gilbert, 163 Vt. 549, 556, 664 A.2d 239, 242 (1995) (holding GAL's report may not be considered as evidence absent agreement of parties or formal admission under rules of evidence). The July 2019 hearing was not an evidentiary hearing; it concerned the preliminary question of the admissibility of son's statements, not the merits of the

---

[10] In the original version of Family Rule 7, which was promulgated in 1991, the court was required to appoint a GAL to assist in deciding whether to allow a child to testify in a custody proceeding, but retained discretion over whether to appoint an attorney for the child as well. See Reporter's Notes, V.R.F.P. 7 (stating, with reference to original rule, that court was required to appoint GAL before child was called to testify and "may" appoint attorney as well). The rule was amended in 2014 to require appointment of an attorney for the child in these situations.

parent-child contact motion. It was appropriate in this context for son's attorney, as his advocate, to argue for what he assessed was in the child's best interests. As discussed above, Rule 7(d) contemplates that a child's attorney will provide input on whether a child should testify.[11] Similarly, Rule 7(f) specifically provides "the guardian ad litem, if requested by the court, may make a brief oral statement on the record as to matters that will help the court formulate issues for further pretrial procedure and trial." V.R.F.P. 7(f)(1)(C). This includes whether the child should be called to testify. See Reporter's Notes—2014 Amendment, V.R.F.P. 7 ("Paragraph (1)(C) provides that the GAL, if requested by the court, may state his or her views on matters pertinent to the future course of the proceedings, including whether to call the child as a witness under Rule 7(d)."). The rule clearly permitted the child's attorney and the GAL to express their views regarding whether the child should be called to testify. Their opinions were not offered as evidence but rather as argument concerning this issue, which the court evidently found to be persuasive.

¶ 34. The court acted within its discretion in determining that son could not be called as a witness pursuant to Family Rule 7(d) because the probative value of son's statements was outweighed by the potential detriment to son that would occur if he were called to testify. First, based on Dr. Mantell's report, the court concluded that only some of son's statements—those described in mother's affidavit in support of her initial motion to modify in April 2019—were made under circumstances sufficiently indicating their trustworthiness. Mother does not acknowledge or challenge this determination, which is supported by the record. The court further

_____

[11] Family Rule 7(f)(1)(A) provides that at any conference or pretrial hearing, the child's attorney or the GAL "may state the child's position, if the child has a position." Mother asserts that son's attorney never met with son and therefore could not possibly know son's position. Mother does not point to any evidence in the record to support this assertion; nor did she object to the attorney's statement on this basis at the time. In any event, it is plain that the attorney was not purporting to recite the child's position but rather articulating his own view about whether it would be in the child's best interests to testify. As discussed above, Family Rule 7(d) clearly contemplates such input from a child's attorney. See also Vance v. Locke, 2022 VT 23, ¶ 25, __ Vt. __, 279 A.3d 689 (explaining that "scope of child's attorney's representation . . . should be guided by the child's best interests").

15

concluded in its decision denying mother's Rule 59(e) motion that son's statements were not substantially probative of sexual abuse by father, for the reasons outlined in Dr. Mantell's report—namely, the inconsistency and implausibility of many of the statements, son's failure to disclose abuse to any of the authority figures who interviewed him outside of mother's presence, the fact that son made the statements at a time when he was experiencing a stressful transition to overnight visits, and the likelihood that son's behaviors originated from being the only child in a high-conflict family. Although mother asserts that the probative value of the statements was "great," she does not directly challenge the court's ruling on this point either.

¶ 35. The court went on to find that the relatively weak probative value of son's statements was outweighed by the risk of harm to son if called to testify. Contrary to mother's argument, the record supports this determination. Son was very young—only four years old—when he made the statements and when the court issued its initial ruling. He was six years old at the time of the final hearing on mother's motion to modify parent-child contact. The court found that son was already struggling with serious behavioral and mental-health issues stemming in part from the conflict between mother and father and believed that his father had harmed him. Mother herself acknowledged that it could be detrimental to son's wellbeing if he were required to testify in court. Given son's tender age and condition, and the general statutory policy of strictly limiting testimony in custody proceedings by children who are the subject of those proceedings, see 15 V.S.A. § 594, the court did not abuse its discretion in concluding that the potential harm to son outweighed the probative value of his statements in this case, thereby precluding his testimony under Rule 7(d) and making him unavailable for purposes of Rule 804a. See Maryland v. Craig, 497 U.S. 836, 855 (1990) (acknowledging "growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court").

¶ 36. Finally, even if we agreed that the court erred in excluding son's statements on this basis, mother has failed to demonstrate that the error resulted in prejudice because the statements

were eventually admitted in another form. See V.R.C.P. 61 (providing that erroneous exclusion of evidence is not ground for reversal unless error resulted in prejudice). Dr. Mantell's report and its accompanying appendices were admitted into evidence by stipulation of the parties at the hearing on parent-child contact. The report and accompanying documents contain most, if not all, of the statements that son allegedly made to mother and other adults. See Trombley v. Sw. Vt. Med. Ctr., 169 Vt. 386, 396, 738 A.2d 103, 111 (1999) (holding any error in exclusion of supervisory reports related to patient complaints was harmless where two of three complaints were ultimately admitted into evidence); In re Est. of Laitinen, 145 Vt. 153, 159, 483 A.2d 265, 268-69 (1984) ("The fact that evidence has been excluded improperly is harmless if it can be shown that it has been admitted at another time or in another form."). Accordingly, even if the exclusion of the statements was erroneous, it was not reversible error.

¶ 37. The family division was faced with a difficult and sensitive decision in a highly fraught case. It amply explained the reasoning for its decision, which was supported by the record. We therefore affirm the decision below.[12]

Affirmed.

FOR THE COURT:

_____

Chief Justice

---

[12] Because we affirm the court's decision to exclude son's hearsay statements under Rule 804a on its merits, we do not reach mother's argument that the court erred in concluding that she waited too long to object to the court's reliance on the statements of son's attorney and GAL.